Brenda EVANS et al., Plaintiffs,

v.

MEMBERS OF THE STATE BOARD OF EDUCATION, State Superintendent of Public Instruction, Members of the Board of Trustees of Clayton School District No. 119, Defendants.

Civ. A. No. 1816.

United States District Court
D. Delaware.

Nov. 9, 1956.

Louis L. Redding, Wilmington, Del., for plaintiffs.

David P. Buckson and George R. Wright, Dover, Del., for the Members of

the Board of Trustees of Clayton School District No. 119, defendants.

WRIGHT, District Judge.

This is a class suit brought pursuant to Rule 23(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.[1] All of the plaintiffs are among those classified as "colored", of Negro blood and ancestry, and are residents of Clayton, Delaware. The defendants are the members of the State Board of Education, the Board of Trustees of Clayton School District No. 119 and the State Superintendent of Public Instruction.

The complaint alleges plaintiffs " * * * by reason of their residence, except for their race, color and ancestry, would be acceptable by defendants for attendance at the public school in Clayton School District No. 119." [2] The complaint further charges that in response to a petition addressed to the defendants, as members of the Board of Trustees of the Clayton School District No. 119, " * * * to take immediate steps to reorganize the public school * * * · on a racially nondiscriminatory basis and to eliminate racial segregation in said school," [3] said defendants officially stated they had no plan for desegregation.[4] The failure and refusal of the Board of Trustees of the Clayton School District to reorganize the public school of the school district on a racially nondiscriminatory basis was called to the attention of the defendant members of the State Board of Education, who were requested to immediately desegregate the public school.[5] On March 15, 1956 the defendant members of the State Board of Education, by official action, unanimously refused to comply with the plaintiffs' request to desegregate said public school.[6]

1. "Rule 23. * * * (a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

* * * * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

2. Par. 3 of the Complaint.

3. Par. 5 of the Complaint.

4. Par. 6 of the Complaint.

5. Par. 7 of the Complaint.

6. Par. 8 of the Complaint.

Some of the defendants, namely, the members of the Board of Trustees of Clayton School District No. 119, have moved to dismiss the complaint as to them on the grounds, (1) the complaint fails to state a claim against the defendants upon which relief can be granted, and (2) this court lacks jurisdiction over the subject matter.

The defendants urge the complaint fails to state a claim upon which relief can be granted because there is absent any allegation of the non-existence of administrative impediments to full faith compliance with the constitutional principles set forth by the Supreme Court in the two Brown decisions.[7] Omission of this allegation is fatal, according to defendants, because they read the second Brown decision as conditioning the right of a Negro to attend a public school without regard to racial considerations.

Defendants misapprehend the meaning of the two Brown decisions. The first Brown decision supplied an unqualified affirmative answer to the question of whether "segregation of children in public schools solely on the basis of race, even though the physical facilities and other 'tangible' factors may be equal, deprive the children of a minority group of equal educational opportunities".[8] The Supreme Court expressed its holding in the following manner:

"* * * we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment."[9]

In the second Brown decision, the Supreme Court referred to the first Brown case as a declaration of "the fundamental principle that racial discrimination in public education is unconstitutional".[10] After incorporating the opinion in the first Brown decision by reference into the opinion of the second Brown decision, the Supreme Court indicated the subject matter of the second opinion was to determine "the manner in which the relief is to be accorded."[11] Therefore, the second Brown decision cannot be construed as conditioning the constitutional right set forth in the first Brown case. Rather, the second Brown decision must be read as establishing a standard as to what constitutes a good faith implementation of the governing constitutional principles set forth in the first Brown decision. Not only do the constitutional principles set forth in the first Brown decision remain unqualified, but, the defendants also have the burden of advancing reasons justifying delay in carrying out the Supreme Court ruling.[12]

7. Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, hereinafter referred to as the first Brown case; Brown v. Board of Education of Topeka, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, hereinafter referred to as the second Brown decision.

8. 1954, 347 U.S. 483, at page 493, 74 S. Ct. at page 691.

9. Id., 347 U.S. at page 495, 74 S.Ct. at page 692.

10. 1955, 349 U.S. 294, at page 298, 75 S. Ct. at page 755.

11. Ibid.

12. "* * * the [inferior] courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, rul-

ing. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. *The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date.* To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems." (Emphasis added.) Brown v. Board of Education of

It would be illogical to hold plaintiffs' complaint must set forth facts which defendants will have the burden of proving.

The second objection of defendants goes to the jurisdiction of this court over the subject matter of the complaint. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343. 28 U.S.C. § 1331 provides:

"§ 1331. Federal question; amount in controversy

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States. June 25, 1948, c. 646, 62 Stat. 930."

The pertinent portion of 28 U.S.C. § 1343 provides:

"§ 1343. Civil rights

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*    \*    \*    \*    \*    \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. June 25, 1948, c. 646, 62 Stat. 932."

The jurisdiction of this court, invoked under the civil rights jurisdictional statute, 28 U.S.C. § 1343, is questioned by the defendants on the theory that when the Board of Trustees of Clayton School District No. 119 officially stated they had no plan for desegregation they were not acting "under color of any State law". This conclusion is unsound and can only be reached by traveling a tortuous path of conceptualistic reasoning.

The local school boards are a legislative creation of the State of Delaware.[13] The State Board of Education has determined as a matter of general policy (1) "that any steps toward integration must be embodied in a plan to be devised by the local board", and (2), "that any such plan must be submitted to the State Board for consideration and approval".[14] Regulations of the State Board of Education have the force and effect of law.[15] A plan of integration cannot be formulated by the defendants as individuals. Any action taken by the individual defendants relative to the integration problems of Clayton School District No. 119 is possible only because by virtue of State law they are the duly and legally constituted Board of Trustees of the Clayton School District. Thus the defendants alleged failure to formulate a plan for integration must be considered to be done under color of State law.[16]

Topeka, 1955, 349 U.S. 294, at pages 300–301, 75 S.Ct. 753, at page 756, 99 L.Ed. 1083.

13. 14 Del.C.

14. Steiner v. Simmons, Del.1955, 111 A. 2d 574, at page 582.

15. Id., 111 A.2d at page 583.

16. Cf. Ex parte Commonwealth of Virginia, 1879, 100 U.S. 339, at page 347, 25 L.Ed. 676: "Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State."

In Iowa-Des Moines National Bank v. Bennett, 1931, 284 U.S. 239, at page 246, 52 S.Ct. 133, at page 136, 76 L.Ed. 265, it was said: "When a state official, acting under color of state authority, invades, in the course of his duties, a private right secured by the Federal Constitution, that right is violated, even if the state officer not only exceeded his authority but disregarded special commands of the state law."

Finally, it has been stated, "Misuse of power, possessed by virtue of state law and made possible only because the

Since the court has jurisdiction under 28 U.S.C. § 1343, it is unnecessary to determine whether the court would have jurisdiction under 28 U.S.C. § 1331. Accordingly, that question is left undecided. The defendants' motion to dismiss is denied.

An order in accordance herewith may be submitted.

wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic,

1941, 313 U.S. 299, at page 326, 61 S.Ct. 1031, at page 1043, 85 L.Ed. 1368.