Brenda EVANS, an Infant, by Charles Evans, her guardian ad litem et al.

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and Richard W. Comegys, et al., Members of the Board of Trustees of Clayton School District No. 119.

Madeline STATEN, an Infant, by her guardian ad litem Eleanora M. Staten et al.

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and Max Corder, et al., Members of the Board of Education of the Milford Special School District.

Julie COVERDALE, an Infant, by Annie E. Coverdale, her guardian ad litem et al.

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and Marjorie Baker, et al., Members of the Board of Trustees of Greenwood School District No. 91.

Eyvonne HOLLOMAN, an Infant, by her guardian ad litem, Flossie Holloman et al.

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and James L. Brooks, et al., Members of the Board of Trustees of Milton School District No. 8.

David CREIGHTON, an Infant, by his guardian ad litem, Joseph Creighton et al.,

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and William E. Prettyman, et al.,

Members of the Board of Education of the Laurel Special School District.

Marvin DENSON, an Infant, by his guardian ad litem, Clarence Denson et al.,

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and Jacob H. Moore, et al., Members of the Board of Education of the Seaford Special School District.

Thomas J. OLIVER, Jr., an Infant, by his guardian ad litem, Thomas J. Oliver et al.,

v.

Madeline BUCHANAN, et al., Members of the State Board of Education, and George R. Miller, Jr., State Superintendent of Public Instruction, Appellants, and Raymond E. Townsend, et al., Members of the Board of Trustees of John M. Clayton School District No. 97.

Nos. 12375–12381.

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1958.

Decided May 28, 1958.

Rehearing Denied June 20, 1958.

Opinion re Recall of Mandate July 23, 1958.

Alton F. Tybout, Wilmington, Del. (Joseph Donald Craven, Atty. Gen., Frank O'Donnell, Jr., Chief Deputy Atty. Gen., on the brief), for members of State Board of Education and the Superintendent of Public Instruction.

James M. Tunnell, Georgetown, Del., for Milford, Seaford, Laurel and Greenwood Local Boards; James H. Hughes, 3d, Dover, Del., for Board of Education of Milford School Dist. (Louis L. Redding, Wilmington, Del., on the brief).

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The appeals at bar arise out of seven cases in the court below relating to the same subject matter and may be disposed of appropriately in one opinion. The jurisdiction of the court below was invoked under Section 1331, federal question and jurisdictional amount, under Section 1343, Civil Rights, Title 28 U.S.C. and under Section 1983, Title 42 U.S.C., and under the Fourteenth Amendment to the Constitution of the United States. No issue as to jurisdiction is presented.

The histories of these litigations are set out in some detail in the opinions of the court below, referred to from time to time hereinafter, and need not be repeated here.[1] It is sufficient to state that following the decisions of the Supreme Court of the United States in Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 and 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, the Delaware State Board of Education requested the local school district boards to submit plans for the admission and education of Negro children into the

1. See also the opinion of the Supreme Court of Delaware in Steiner v. Simmons, 1955, Del., 111 A.2d 574.

public schools of the respective school districts on a racially non-discriminatory basis. There was prompt compliance by many school districts in Delaware but the local school district boards in Kent and Sussex Counties in general did not comply with the directions of the State Board of Education. Thereafter the minor plaintiffs, children residing within seven school districts, by guardians *ad litem*, brought the seven suits in the court below to compel compliance with the rulings of the Supreme Court of the United States in the Brown case.

All of the complaints allege that the minor plaintiffs are children resident within their respective school board districts and are entitled immediately to admission to the schools of their districts and would be accepted as students therein except for their race, color and ancestry. The seven suits are class actions brought on behalf of all children similarly situated to the minor plaintiffs, pursuant to Rule 23(a) (3) Fed.R.Civ.Proc., 28 U.S.C.[2]

The defendants are members of the State Board of Education, the State Superintendent of Public Instruction and members of local school boards. The relief sought by the complaints was that the court below grant interlocutory and permanent injunctions declaring that the administrative orders, regulations and rules, practices or usages, pursuant to which the minor plaintiffs are segregated with respect to their schooling because of race, color or ancestry, violate the Fourteenth Amendment to the Constitution of the United States, and that the court below issue interlocutory and permanent injunctions requiring the defendants to admit the minor plaintiffs and all other children similarly situated to the public schools of their respective school districts on a racially non-discriminatory basis.

The appellants, who are members of the State Board of Education and the State Superintendent of Public Instruction, filed joint answers in all seven cases asserting that the power to effect desegregation lies not in them but in the local school boards. The members of the boards of education of the school districts also filed joint answers. These answers are substantially the same and, briefly put, assert that the local boards do not possess the power or jurisdiction under the school laws of Delaware, or the available facilities, to effect the admission of the minor plaintiffs or other children similarly situated to the respective schools on a racially non-discriminatory basis.

The members of the Board of Trustees of Clayton School District No. 119, at C.A. No. 1816 in the court below, No. 12,375 in this court, answered also that they were "improper parties" to the action. The court below correctly held this contention invalid. D.C.Del.1957, 149 F. Supp. 376.

On January 21, 1957 the plaintiffs in the case involving the Clayton School District mentioned immediately above filed a motion for summary judgment pursuant to Rule 56(a), Fed.R.Civ.Proc., 28 U.S.C.[3] After argument, the court

---

2. "Rule 23 * * * (a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

> * * * * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

In respect to the right of the plaintiffs to maintain a class action, see Evans v. Members of State Board of Education, D. C.Del.1956, 145 F.Supp. 873.

3. Rule 56(a) is as follows: "For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

below on March 6, 1957, filed an opinion, 149 F.Supp. 376, holding that the members of the Board of Trustees of Clayton School District No. 119 were making no reasonable start toward the admissions of the minor plaintiffs and those similarly situated on a racially non-discriminatory basis. Following this opinion, on April 1, 1957, the court entered a decree enjoining members of the Board of Trustees of the Clayton School District "in accordance with further order" from refusing admission to children on account of race, color or ancestry and requiring the members of the Board of Trustees of the Clayton School District to submit to the State Board of Education, within 30 days, a plan for the admittance to, and the enrollment and education in the public school maintained by the Board of the minor plaintiffs and all other children on a racially non-discriminatory basis, and also requiring the members of the State Board of Education within 60 days to file a plan so providing with the court below.

An appeal from this decree was taken to this court but was not prosecuted and accordingly the record was returned to the court below. The decree of April 1, 1957 is presently outstanding. No other similar decree addressed to members of the local school boards was entered in the other six cases but it is in this respect only that the case involving Clayton School District No. 119 differs in substance from the other six cases involving the other local school boards. However, in view of the fact that the operation of the decree in the Clayton case was made contingent on a further order of the court below we are justified in treating and will treat this case as *in pari passu* with the other six cases.

On June 21, 1957, the plaintiffs in six of the seven cases, the case at No. 1816 in the court below involving Clayton School District No. 119 being excluded, moved for summary judgment against the members of the State Board of Education and the State Superintendent of

Public Instruction. It should be noted that the defendants who are members of the local school boards were not included in these motions. On June 25, 1957, the plaintiffs in the six cases last referred to, the case at No. 1816 in the court below being excluded, moved to consolidate the six cases.

On July 25, 1957, the court below handed down an opinion, 152 F.Supp. 886, granting the motion to consolidate the six cases and the motions for summary judgment against the members of the State Board of Education and the State Superintendent of Public Instruction. The court below went further, however, and, apparently *sua sponte*, since no applicable like motions had been filed for summary judgment and for consolidation in respect to the suit at No. 1816 in the court below involving the Clayton School District No. 119, also granted summary judgment in that case against the members of the State Board of Education and the State Superintendent of Public Instruction and consolidated that case with the other six actions. The decree of the court below was an appropriate and proper one, and furnishes us with an additional reason for treating the appeal involving the Clayton School District No. 119 on a parity with the other six cases. The decree entered in all seven cases by the court below requires that the minor plaintiffs in all seven cases and children similarly situated should be admitted to their respective school districts on a racially non-discriminatory basis by the Autumn term 1957 and enjoins the designated defendants from refusing admission to these children. It also directs the State Board of Education and the Superintendent of Public Instruction to submit a plan to the court for the admittance, enrollment and education of the children on a racially non-discriminatory basis within 60 days and to serve copies of the plan upon the members of the local school boards involved within 45 days.[4] The appeals

4. The order of the court is as follows:
"1. The motion of plaintiffs to consolidate the following causes, C.A.1816

through C.A.1822, inclusive, be and the same is hereby granted and all pending

at bar, taken by the members of the State Board of Education and the Superintendent of Public Instruction, followed.

The State Superintendent of Public Instruction and the members of the State Board of Education assert that the exercise of two powers are essential for planning and effecting desegregation. They argue that to admit the children involved to the respective public schools involved, authority must be exercised to admit individual students to one school rather than to another and that to educate students it is necessary to possess the authority to employ and assign teachers and principals to the various schools. They assert also that the powers necessary to effect these results are vested by the pertinent Delaware statutes solely in the local district school boards. They point to the provisions of 14 Del.C. Sections 741, 944, 976, 1401 and 1410, which variously provide for the employment of teachers and principals of schools; for the fixing of their salaries and for the termination of their employment.

The appellants point also to 14 Del.C. Sections 902 and 941, providing for the establishment of Boards of Education in the local school districts [5] and specifying the duties of these boards, included among which is the determining of policies in relation to the maintaining of separate schools for white and colored children, and the settling of disputes and for property administering the public schools of the districts. The appellants also assert that they are without the authority to impose a plan for desegregation on the boards of education of the respective school districts because the members of these boards in Kent and Sussex Counties are elected by the voters of the school districts, 14 Del.C. Section 305, and that therefore they are without authority to appoint or remove these

causes in this Court are hereby consolidated for judicial decision.

"2. The plaintiffs' motions for summary judgment in C.A.1816 through C.A. 1822, inclusive, as against the Members of the State Board of Education and the State Superintendent of Public Instruction be and the same are hereby granted.

"3. The minor plaintiffs in the respective cases and all other Negro children similarly situated are entitled to admittance, enrollment and education, on a racially nondiscriminatory basis, in the public schools of Clayton School District No. 119, Milford Special School District, Greenwood School District No. 91, Milton School District No. 8, Laurel Special School District, Seaford Special School District and John M. Clayton School District No. 97, respectively, no later than the beginning of or sometime early in the Fall Term of 1957.

"4. In accordance therewith defendants are permanently enjoined and restrained from refusing admission, on account of race, color or ancestry, of respective minor Negro plaintiffs and all other children similarly situated to the public schools maintained in the respective above-mentioned school districts.

"5. To further obtain and effectuate admittance, enrollment and education of said minor plaintiffs and all other children similarly situated to the public schools maintained in the respective above-mentioned school districts, on a racially nondiscriminatory basis, defendant Members of the State Board of Education, having general control and supervision of the public schools of the State of Delaware and having the duty to maintain a uniform, equal and effective system of public schools throughout the State of Delaware, and defendant George R. Miller, Jr., State Superintendent of Public Instruction, shall submit to this Court within 60 days from the date of this order a plan of desegregation providing for the admittance, enrollment and education on a racially nondiscriminatory basis, for the Fall Term of 1957, of pupils in all public school districts of the State of Delaware which heretofore have not admitted pupils under a plan of desegregation approved by the State Board of Education.

"6. 15 days prior to the submission of said plan to this Court, defendant Members of the State Board of Education, etc., shall send in writing by registered mail a copy of the plan of desegregation herein ordered to be submitted to this Court, together with a copy of this Order, to each member of the school board in all public school districts of the State of Delaware which heretofore have not admitted pupils under a plan of desegregation."

5. It should be noted that Section 301, 14 Del.C., defines a "district" as meaning a "School District or a Special School District or both."

elected representatives or to control their actions in any way. In short, the appellants contend that they are without power effectively to carry out the court's decree.

Some of the local or district school boards, employing those of Milford, Seaford, Laurel and Greenwood as examples, contend primarily that the State Board of Education possesses the power to determine the operation of the public schools and that the State Board has the authority to adopt rules and regulations for the administration of the public school system of Delaware and that these shall be binding throughout the State. 14 Del.C. Section 122. They assert also that the school laws of Delaware put the burden on the Board of Education and the State Superintendent of Public Instruction to maintain a "uniform, equal and effective" educational system in Delaware. 14 Del.C. Section 141. The plaintiffs make similar contentions but they also assert that the Supreme Court of Delaware in Steiner v. Simmons, Del. 1955, 111 A.2d 574, held that the State Board of Education has the power to regulate the public schools of Delaware, relying *inter alia* on 14 Del.C. Sections 101(a), 121 and 122. These statutory provisions place certain supervisory powers over the whole of the Delaware school system in the State Board of Education. While the parties to these suits make other and further contentions these need not be discussed in this opinion. It should be noted, however, that we have considered them.

In determining the issues presented it is necessary to start with the guiding principles enunciated by the Supreme Court in its opinions in Brown v. Board of Education of Topeka, supra. First, the Supreme Court has ruled that the Fourteenth Amendment to the Constitution of the United States prohibits the segregation of children in public schools solely on the basis of race. Second, the Court has prohibited admission to the public schools on a basis of racial discrimination. Third, the Court has required United States District Courts to enter such decrees as are necessary and proper to admit children to public schools on a racially non-discriminatory basis "with all deliberate speed."

■ Among the statutory duties entrusted to the State Board of Education by the General Assembly of Delaware is that of maintaining a "uniform, equal and effective system of public schools throughout the State * * *", 14 Del. C. Section 141. While this section of the Delaware Code also requires the State Board of Education, pursuant to Article 10, Section 2, of the Constitution of Delaware, Del.C.Ann., to maintain separate systems for white and Negro children, these provisions fall in view of the decisions of the Supreme Court of the United States referred to for these decisions redefined the concept of equality in public education. But while the separate but equal provisions of the Delaware Constitution and laws have been stricken down, the statutory mandate to the State Board of Education continues to exist and requires that body to maintain a uniform, equal and effective public school system in the State of Delaware. To hold otherwise would be nullification.

■ The contention of the members of the State Board of Education that the mandates of that body have no force upon the local school boards and the persons who comprise them is erroneous. The time when the Delaware educational system was encompassed by a loose federation of "425 educational republics" has long since passed. 2 Reed, History of Delaware, 691. The centralized nature of the present Delaware public educational system and the powers and duties of the State Board of Education are demonstrated fully by statutes of Delaware dealing with education.[6] This con-

---

6. As follows: 14 Del.C. § 101(a). The State is vested with the "general administration and supervision of the free public schools and of the educational interests of the State."

14 Del.C. § 121. "The Board shall exercise general control and supervision over the public schools of the State, * * *."

tention of the members of the State Board of Education is really one to the effect that the individuals comprising the local school boards will not obey the law. We will not make such an assumption.

We point out again that 14 Del.C. Section 122, gives the State Board of Education the power to "adopt rules and regulations for the administration of the free public school system which, when prescribed and published, shall be binding throughout the State." As if to reemphasize the paramountcy of the State Board of Education's function in developing and maintaining a uniform school system throughout the State, Section 941, 14 Del.C., in specifying the duties and powers of the local school boards of the respective school districts, states the members of these bodies shall perform their duties and exercise their powers "subject to the provisions of [Title 14] and in accordance with the rules and regulations of the State Board of Education." In view of the foregoing we cannot doubt but that the State Board of Education was designed as and is the central administrative force in Delaware's system of public education and is not a mere powerless reviewer of actions taken by local school boards. Our ruling as to the effect of the school laws of Delaware in this respect is confirmed by the opinion of the Supreme Court of Delaware by Mr. Chief Justice Southerland in Steiner v. Simmons, supra, Del., 111 A.2d at page 580, wherein it is stated: "By the school laws of the State it [the State Board of Education] is vested with general policy-making power, and with authority to adopt rules and regulations for the administration of the public school system."

Accordingly we perceive no merit in the contention of the State Board of Public Education and of the State Superintendent of Public Instruction that the failure of the court below to subject the members of the local school boards to the injunction of July 15, 1957 places or leaves the members of the State Board of Education and the State Superintendent of Public Instruction in such a position that they stand in danger of contempt proceedings in the court below. The appellants say that they are in a position of danger because the mandate imposed upon them by the order of the court cannot be carried out by them in view of the uncooperative attitude of members of the local school boards. The appellants assert legal impotency to carry out the decree of the court unless the members of the local school boards be made subject to the injunction. If a specific order of the court below be required to compel the members of the local school boards to perform their duties under the school laws of Delaware, we may assume that the court below will enter an appropriate decree against them at an appropriate future time and also will have due regard for the actions taken by members of the State Board of Education and by the State Superintendent of Public Instruction to create a racially non-discriminatory school system in Delaware. We reiterate that we will not assume that the members of the local school boards, also named as defendants in the instant litigations, will not adhere to rules and regulations of the State Board of Education as to the non-discriminatory racial practices if such rules and regulations are created and promulgated by the State Board of Education.

Moreover, an analysis of the decree appealed from demonstrates that the members of the State Board of Education and the State Superintendent of

---

14 Del.C. § 121(2). The State Board has the power to determine the educational policies of the State.

14 Del.C. § 121(7). The State Board shall decide "all controversies and disputes involving the administration of the public school system."

14. Del.C. § 121(10). The State Board shall have the duty of "causing * * * the provisions of this title to be carried

into effect, so as to provide a uniform, equal and effective system of public schools throughout the State; * * *."

14 Del.C. 141(a). "The Board shall maintain a uniform, equal and effective system of public schools throughout the State, and shall cause the provisions of this title, the by-laws, rules and regulations and the policies of the Board to be carried into effect."

Public Instruction are not required to guarantee the accomplishment of desegregation in the Delaware school system but are enjoined from refusing admission to the minor plaintiffs and other children similarly situated to the schools of their respective school districts on account of race, color or ancestry. In short, the decree of the court below was designed to relieve the appellants of passivity and to compel them to go forward with the desegregation of the Delaware schools. The first step to be taken by the State Board of Education, with the aid of the State Superintendent of Public Instruction, is to submit a plan designed to effect the principles enunciated in the decisions of the Supreme Court in Brown v. Board of Education of Topeka, supra, as ordered by the court below.

The members of the State Board of Education and the State Superintendent of Public Instruction may not delay further in the formulation and submission of such a plan. They must prepare and submit it promptly. The time for hesitation is past and the time for definitive action has arrived. The law as enunciated by the Supreme Court of the United States must be obeyed by all of us. If we do otherwise we will destroy our present form of constitutional government.

The decree of the court below stated dates in 1957 by which such a plan should have been submitted by the State Board of Education. Those dates are, of course, presently inoperative. New dates must be set. This is a matter which must be left to the discretion of the trial court. Those portions of the decree stating dates for the submission of the plan by the State Board of Education to the court below and to each member of all of the school boards in all of the public school districts which heretofore have not admitted pupils under a racially non-discriminatory plan, will be vacated so that the court below will be free to take appropriate action. The decree in all other respects will be affirmed.

Opinion re Recall of Mandate.

The mandate of this court which was handed down on June 30, 1958 will be recalled, subject to the proviso that if the appellants have not filed a petition for writs of certiorari to the Supreme Court of the United States on or before August 14, 1958, and have not filed with the Clerk of this court a certificate to such effect by August 18, 1958, the mandate of this court shall issue forthwith to the court below to carry out and effect the judgments of this court.

We take this step so that the appellants, by application to the Supreme Court for writs of certiorari, may exhaust their legal remedies without the possible complication of the cases becoming moot by action of the court below effecting our judgments.

I am authorized to state that Judge KALODNER dissents and is of the view that in the light of all the circumstances, including the delay of the appellants in making application to this court in respect to the mandate, that the mandate should not be recalled.