Brenda EVANS et al., Plaintiffs,

v.

Madeline BUCHANAN et al., Defendants.

Civ. A. Nos. 1816–1822.

United States District Court
D. Delaware.

June 15, 1959.

Louis L. Redding, Wilmington, Del., for plaintiffs.

Januar D. Bove, Jr., Atty. Gen., of the State of Delaware, for the State Bd. of Ed., et al.

James M. Tunnell, Jr., Wilmington, Del., and James H. Hughes, III, Dover, Del., for the Milford Special School Dist., et al.

Everett F. Warrington, Georgetown, Del., for the Milton Special School District No. 8.

Max Terry, Dover, Del., for the Caesar Rodney Special School District.

LAYTON, District Judge.

On April 24, 1959, this Court approved a plan providing for the desegregation of the Delaware Public School system on a grade by grade basis over a period of twelve years beginning with all first grades at the Fall Term, 1959. Paragraph 4 of the Plan was disapproved and ordered eliminated because it was

thought to be discriminatory. This paragraph read as follows:

"Whenever possible, every pupil in the grades affected, beginning with the start of the fall term, 1959, and in additional grades as the program expands in succeeding years shall have the choice of (a) attending the nearest school within the district in which he resides or (b) attending the school he would have attended prior to the effective date of this order."

In ordering the paragraph stricken, the Court stated [172 F.Supp. 516]:

"Now, it is a fact that in Georgetown, for example, the majority of the Negroes live in a community known as The Hill. The colored school is close by. The white school is at a much greater distance. Interpreting the language of paragraph 4 in the light of these facts, it would seem to result that no Negro student whose family resides on The Hill may ever enter the white school. Whatever may have been the reasons for this provision, it strikes me as unfair and is ordered to be stricken."

The petition now before this Court seeks the restoration of paragraph 4 to the Plan or, in the alternative, that the Plan contain a provision permitting each local board to establish attendance areas. Insofar as concerns this latter alternative, it is sufficient to say that not only from a practical, but also from a legal, standpoint it is unacceptable.

As to the restoration of the former paragraph 4 to the Plan, the petitioners say, first, that it is not discriminatory, citing School Board of City of Charlottesville, Va. v. Allen, 4 Cir., 240 F.2d 59, 64 and, secondly, that it is necessary that any over-all plan contain a provision establishing uniform attendance areas.

█ It is not clear just how the Allen case, above cited, establishes that a provision such as paragraph 4 is not discriminatory. All the Fourth Circuit Court of Appeals said in that decision was that " * * * local rules as to assignment to classes, so long as such rules are not based on race or color, are to be observed * * *." Had paragraph 4 stated merely that Negro students must abide by the regulations of the State School Board as to attendance areas provided such areas were not established in such fashion as to discriminate against the colored race, there could have been no possible objection. But the paragraph said no such thing. Read against a background of geographical facts of which judicial knowledge may be taken, it provided that in many localities no colored student could ever attend a white school unless his parents thereafter changed their residence to a point closer to the white school than the colored school. Moreover, the paragraph was discriminatory because a white student who lived closer to the colored school than the white school could, nevertheless, thereafter attend the white school.

█ Nor, contrary to the argument of the petitioners, is it essential that the Plan contain a provision providing for uniform attendance areas throughout the State. The State Board of Education has the clear power to establish attendance areas by regulation and all Negro students must abide by any such regulation provided it is non-discriminatory in character and fairly administered.

██ In conclusion, it may be said that many problems will arise from time to time as the result of integrating the Public School System which can only be solved by patience, wisdom and tolerance. The question of the establishment of uniform attendance areas may constitute a major problem* in the future, although,

---

* At the time of the filing of the petition for this rehearing there was newspaper publicity quoting the State Superintendent of Public Schools as saying that unless paragraph 4, or equivalent language, were restored to the Plan, "chaos" would result. As a matter of actual fact, for the school year 1959–1960, but 25 Negro children in the entire State (exclusive of Wilmington) have made application to transfer to a white school.

893

contrary to the contentions of the State Board, no such problem presently exists. The Court is not disposed to see the State educational system disrupted by a sudden, unlimited influx into the white schools of vast numbers of colored students which will lead to serious overcrowding and place a severe strain on school facilities. Nor, conversely, will it permit the school authorities to confine integration to a bare token under the guise of regulations such as paragraph 4. More than five years have now expired since the Supreme Court of the United States declared racial segregation in the public schools unconstitutional. It is time now to get down to the serious business of integration. Surely, it is within the wisdom and ingenuity of the members of the State Board to devise a regulation dealing with attendance areas which will prevent an immediate and unwarranted overcrowding of the facilities of the white schools and at the same time, upon the showing of good cause, permit a limited number of Negro students to transfer to a white school.

The prayers of the petition are denied. Order upon notice.