281 F.2d 385
 Mary Ann EVANS, an Infant, by Helen Evans, Her Guardian ad
Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Watson, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Richard W. Comegys,
Harry W. Moor, G. Francis Downs, Mary W. Jarrell, Members of
the Board of Trustees of Clayton School District No. 119.
Eugene HARRIS, an Infant, by Thomas Harris, His Guardian ad
Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Watson, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Max R. Corder, E.
Crerar Bennet, Jr., Ernest C. Macklin, George A. Robbins,
Members of the Board of Education of the Milford Special
School District.
Julie COVERDALE, an Infant, by Annie E. Coverdale, Her
Guardian ad Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Watson, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Wilbur C. Root, Norman
C. Hamsted, Harry Webb, Majorie Baker, Members of the Board
of Trustees of Greenwood School District No. 91.
Eyvonne HOLLOMAN, an Infant, by Flossie Holloman, Her
Guardian ad Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Watson, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Howard T. West, John
T. Fisher, Norman Clifton, Albert Lank, Members of the Board
of Trustees of Milton School District No. 8.
David CREIGHTON, an Infant, by Josephine Creighton, His
Guardian ad Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Waston, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Ford M. Warrington,
Otis P. Carmine, Clarence J. Evans, Homer L. Disharoon, Jr.,
Members of the Board of Education of the Laurel Special
School District.
Marvin DENSON, an Infant, by Clarence Denson, His Guardian
ad Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Watson, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Robert H. Stamm, Irene
F. Larrimore, Oscar W. Allen, Jr., John C. Rawlins, Members
of the Board of Education of The Seaford Special School District.
Thomas J. OLIVER, Jr., an Infant, by Thomas J. Oliver, His
Guardian ad Litem, et al., Appellants,
v.
Jane ENNIS, Vincent A. Theisen, Marvel O. Watson, Roy A.
Wentz, Ralph Grapperhaus, Harold B. English, Members of the
State Board of Education, George R. Miller, Jr., State
Superintendent of Public Instruction, Raymond Townsend,
George H. Bunting, William B. Chandler, Jr., Roland V. Cobb,
Members of the Board of Trustees of John M. Clayton School
 District No. 97.
 Nos. 13018-13024.
 United States Court of Appeals Third Circuit.
 Argued April 22, 1960.
Decided July 19, 1960, Petitions for Rehearing Denied Aug.
29, 1960, Amended Judgment Aug. 29, 1960.
 
 Louis L. Redding, Wilmington, Del., for appellants.
 Januar D. Bove, Jr., Wilmington, Del. for State Board of Education and State Superintendent of Public Instruction.
 James M. Tunnell, Jr., Wilmington, Del. (Morris, Nichols, Arsht & Tunnell, Wilmington, Del., on the brief), James H. Hughes, III, Dover, Del., for Local Boards of Milford, Seaford, Laurel and Greenwood, for respondent.
 Everett F. Warrington, Georgetown, Del., for Board of Trustees of Milton Shcool Dist. No. 8.
 Before BAGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 The background of these appeals is stated in Evans v. Buchanan, D.C.Del. 1957, 152 F.Supp. 886, and 3 Cir., 1958, 256 F.2d 688. After our remand, the court below directed the defendant, the State Board of Education of Delaware, and the defendant, George R. Miller, Jr., State Superintendent of Public Instruction, to submit to it a plan of desegregation. A proposed plan was submitted and was approved with certain modifications. See Evans v. Buchanan, D.C., 172 F.Supp. 508, and D.C., 173 F.Supp. 891. On July 6, 1959, the court below entered a final order approving the plan. This is the order appealed from.
 
 
 2
 It is sufficient to state here that the plan as approved provides for the desegregation of the Delaware Public Shcool System on a grade-by-grade basis over a period of 12 years beginning with all first grades at the Fall term, 1959. The plaintiffs-appellants object to this plan on two grounds. First, they assert that the plan is not in accord with the mandate of this court which they say in substance approved the order of Judge Leahy entered in the court below on July 15, 1957, and which in their view required immediate state-wide desegregation in all schools and at all grades. Cf. our opinion at 256 F.2d 688. The plaintiffs' second objection is that the plan as approved by the court below does not follow the intent and substance of the decisions of the Supreme Court in Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 and 1955, 349 U.S. 294, 75 S.Ct. 753, 757, 99 L.Ed. 1083, in that the plan does not effect desegregation 'with all deliberate speed' and is not a 'reasonable start toward full compliance' with the ruling of the Supreme Court in its Brown opinion of May 17, 1954.
 
 
 3
 In its opinions the court below has reached the conclusion that the plan approved is a necessary and proper, if not the only feasible, one, and that integration at a more rapid rate would overcrowed the schoolrooms, overtax the teachers, and have a most undesirable emotional impact on some of the socially segregated communities of Delaware. The court below concluded in substance that desegregation at a more rapid rate than that approved by it would prove to be a disruptive and futile proceeding which might do great harm to the Delaware School System.
 
 
 4
 We cannot agree. We affirmed. the decree of Judge Leahy which in plain terms required statewide integration of the public school system of Delaware in all classes by an adequate plan by the Fall term 1957, and which enjoined designated defendsnts from refusing admission to Negro children on a racially discriminatory basis. The plan approved by the court below is not in accordance with Judge Leahy's decree or with the mandate of this court. Desegregation of the Delaware public school system on a grade-by-grade basis over a period of 12 years, beginning as it did in the Fall of 1959, does not follow the intent and substance of the rulings of the Supreme Court in Brown v. Board of Education of Topeka, supra.
 
 
 5
 The plan and the evidence of many of its proponents seem to us to be fraught with unreality, though undoubtedly the witnesses, the defendants, and indeed all concerned, have acted in good faith. It appears, from Exhibit No. 11, 'Population by School Districts and High School Areas, January 1959', that the approximate number of Negro children available for desegregation in Delaware was 6,813 and that the number of Negro children eligible or available for desegregation in the first grades as of that date was approximately 1,000. The affidavit of June 10, 1959, of Superintendent Miller, states that the number of Negro children applying for entrance into the first grades of those 'White Schools', which previously had not had plans for desegregation approved by the State Board of Education, amounted to only 25.[1] Percentage-wise, therefore, the number of Negro children who registered for entrance into the first grades in the Fall of 1959 was approximately 2.5% Of those available as set out in Exhibit No. 11.[2] If the same percentage be applied to the 6,813 Negro children referred to in Exhibit 11: viz., if 2.5% Of 6,813 be taken, 170 Negro pupils would have registered from grades 1 to 12 inclusive. Even if this number be trebled the number of Negro children involved if desegregation took place through grades 1 to 12 would barely exceed 500. Doubtless there would be some overcrowding in particular schools as suggested by State's Exhibit 14 and many temporary or permanent rearrangements in school facilities relating to teachers, school houses, school rooms, and transportation would have to be made, but it is unrealistic to suggest that all Negro pupils now in segregated schools would immediately seek admission to desegregated schools. The fact that there must be deemed to be a diminution in the number of Negro children seeking integration, viz., in the number seeking immediate integration as estimated by some of the defendants, is indicated by the fact that of the 42 infant plaintiffs who originally sought relief, approximately 24 have ceased to be active plaintiffs and no longer seek to be integrated. Some of these 24 doubtless have graduated but even if we assume that the number graduating amounts to 10% Of the total, it is clear that the number of active plaintiffs still seeking integration is approximately only 20. It has been the experience in school desegregation that a large number of Negro children do not seek integration even when offered the opportunity. This is common knowledge. We cannot conclude that the situation in Delaware will be noticeably different in this respect than in other critical areas the schools of which already have been successfully integrated. It is the fact that if the plan as approved by the court below be not drastically modified a large number of the Negro children of Delaware will be deprived of education in integrated schools despite the fact that the Supreme Court has unqualifiedly declared integration to be their constitutional right. We cannot believe that such a result is a correct or just one.[3]
 
 
 6
 As we have indicated one of the main thrusts of the opinion of the court below is that the emotional impact of desegregation on a faster basis than that ordered would prove disruptive not only to the Delaware School System but also to law and order in some of the localities which would be affected by integration. We point out, however, that approximately 6 years have passed since the first decision of the Supreme Court in Brown v. Board of Education of Topeka, supra, and that the American people and, we believe, the citizens of Delaware, have become more accustomed to the concept of desegregated schools and to an integrated operation of their School Systems. Concededly there is still some way to go to complete an unqualified acceptance but we cannot conclude that the citizens of Delaware will create incidents of the sort which occurred in the Milford area some five years ago. We believe that the people of Delaware will perform the duties imposed on them by their own laws and their own courts and will not prove fickle to our democratic way of life and to our republican form of government. In any event the Supreme Court has made it plain in Cooper v. Aaron, 1958, 358 U.S. 1, 16, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5, the so-called 'Little Rock case', that opposition is not a supportable ground for delaying a plan of integration of a public school system. In this ruling the Supreme Court has acted unanimously and with great emphasis stating that: 'The constitutional rights of respondents (Negro school children of Arkansas seeking integration) are not to be sacrificed or yielded to * * * violence and disorder * * *'. We are bound by that decision.
 
 
 7
 Doubtless integration will cost the citizens of Delaware money which otherwise might not have to be spent. The education of the young always requires, indeed demands, sacrifice by the older and more mature and resolute members of the community. Education is a prime necessity of our modern world and of the State of Delaware. We cannot believe that the citizens of Delaware will prove unworthy of this sacred trust.
 
 
 8
 In Lucy v. Adams, 1955, 350 U.S. 1, 76 S.Ct. 33, 100 L.Ed. 3, the Supreme Court indicated, as we have never doubted, that individual plaintiffs in a class suit such as those at bar, have a personal right to immediate enforcement of their claims if such be feasible. We can perceive no reason why the individual infant plaintiffs who presently actively seek integration should not be granted that right immediately.
 
 
 9
 For the reasons stated we disapprove the plan insofar as it postpones full integration. The judgment appealed from will be vacated. The court below will be directed to enter an order requiring the State Board of Education of Delaware and the State Superintendent of Public Instruction to submit to the court below on or before December 1, 1960, for its approval a modified plan which will provide for full integration of all grades of the public schools of Delaware commencing with the Fall term 1961. The court below also will be directed to order the individual defendants, respectively members of the Boards of Trustees or of the Boards of Education in the School Districts as named above, to integrate commencing with the Fall term 1960, the respective individual infant plaintiffs who presently actively seek integration. The court below also will be directed to enter an order requiring, except as hereinbefore provided with respect to the individual infant plaintiffs, the continuation of the grade-by-grade integration presently in effect until the modified plan providing for full integration as contemplated by this opinion be put in operation.
 
 On Petitions for Rehearing
 
 10
 BIGGS, Chief Judge.
 
 
 11
 We have imposed a hard task on the State Board of Education of Delaware, on the State Superintendent of Public Instruction, on the other defendants and indeed on the citizens of Delaware for there is a hard task to be done. Adequate education is a duty owed to youth by the community. It is more than this. It is an essential for national survival in the years to come. But the task is not as difficult as the defendants insist. We demonstrated in our opinion of July 19, 1960, that the number of Negro children available for integration in the schools of Delaware is far greater than the number of Negro children who will presently seek integration. In that opinion we pointed to the key fact that only 25 Negro children of approximately the 1,000 available for integration at the first grades, registered for admission at the Fall term 1959. We accentuated the fact that if the same percentage, 2.5%, were applicable to the Negro children seeking integration into all other grades, the number of Negro children seeking integration would be 170, and that even if that number were trebled it would barely exceed 500. See note 2 to that opinion. The petitions for rehearing make no reference whatsoever to this key situation.
 
 
 12
 The State Board of Education, the State Superintendent of Public Instruction and other defendants persist in their position that to grant the relief sought by the plaintiffs will require the immediate integration of approximately 6813 Negro children into the Delaware school system. This is not the task which is imposed on them under our decision. The primary duty that was placed on the State Board of Education and the State Superintendent of Public Instruction was to create a plan by December 1, 1960 whereby those Negor children who seek integration might achieve that end by the commencement of the Fall term, 1961. The number of Negro children who will seek such integration will be a comparatively small one and their integration can be accomplished without great difficulty.
 
 
 13
 As we said in our July 19 opinion the evidence of many of the proponents of the plan approved by the court below seems fraught with unreality. Though the affidavit of Superintendent Miller of June 10, 1959, stated that the number of Negro children who registered for admission at the Fall term 1959 to the first grades as shown by Exhibit No. 11 was 25, we were not informed as to the number of Negro children who were admitted to the first grades at the Fall term 1959. There is nothing in the record which demonstrates the number of Negro children who registered for admission to the first grades at the commencement of the school year 1960. These facts could have been easily supplied to the court below by affidavit and certified to this court even after the appeals were taken. Neither the State Board of Education, the State Superintendent of Public Instruction, nor any of the defendants, insofar as the record shows, have attempted by conducting a registration or by any other means, to bring upon the record the very pertinent fact as to the number of Negro children who actually presently seek integration into grades of the public school system of Delaware. We think that the defendants are reluctant to face the facts, to grasp firmly the nettle that the integration of school systems presents in Delaware and elsewhere. The defendants have evolved the minimum statewide plan and desire to adhere to it. It is indeed a psychologically tempting one but we think that the hazard involved in integrating at the Fall term 1961 all those Negro children who may then seek integration is largely a mental one. It is for these reasons that we will direct the court below to order the State Board of Education and the State Superintendent of Public Instruction to prepare a plan which will provide for the integration at the Fall term 1961 of all Negro school children who then seek integration. Such a plan can be effective, of course, only if it be worked out with the aid of the Local Boards. Such aid must be forthcoming or it will be required by order of court. But as we pointed out in our original opinion in these cases, 1958, 256 F.2d 688, 693, it is the duty of the State Board of Education to maintain a 'uniform, equal and effective system of public schools throughout the State * * *', 14 Del.C. 141. It follows that the primary responsibility for the preparation of the plan which will be required by our judgments must rest on the members of the State Board of Public Education and the State Superintendent of Public Instruction. This is the reason why that primary duty is imposed on them by our decision.
 
 
 14
 It is obvious that in the years to come more and more Negro children will seek integration into the public schools of Delaware and that this desire must be implemented in accordance with the decisions of the Supreme Court in Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. As time passes and the number of Negro school children seeking integration increases, modifications and enlargements of school facilities will be required. The State Board of Education, the State Superintendent of Public Instruction and the Local Boards can effect such changes and modifications as may be required with the approval of the court below.[4] Eventually a wholly integrated school system will be effected for Delaware: 'wholly integrated' in the sense that all school children, whether white or Negro, whose attendance at school is required by law at public schools, 14 Del.C. Section 2702, will attend public schools without regard for race or color.[5] The integration to be provided for by the plan to be submitted to the court below for its approval as its first essential element must provide for the integration of all Negro school children who desire integration at the Fall term 1961. As its second essential element the plan to be submitted must contain adequate provision for the integration of the ever increasing number of Negro school children who will seek integration in the school years following 1961. This second element of the plan, if it is to be consummated, will necessitate the making of immediate estimates as to future school facilities. The making of such estimates is not a simple matter. Their creation will require the exercise of energy, skill, patience, and creative adaptability by the public school authorities, and, as we have indicated, funds to be appropriated by the General Assembly of Delaware. The duty imposed on the State Board of Education in this respect is as clear as is the responsibility confided to this court and to the court below to make certain that the mandate of the Supreme Court is carried out. If the school authorities do their part and the corresponding duty placed on the people of Delaware by their civic conscience is not met by action of the General Assembly, the public school authorities will at least have the satisfaction of knowing that they have done their duty as the law requires.
 
 
 15
 We are aware that strong courts have held in substance that a grade-by-grade integration of the kind approved by the court below has met the criteria laid down by the Supreme Court in its decisions in Brown v. Board of Education of Topeka, supra. Such a ruling, as some of the petitioners point out, is contained in the decision of the Court of Appeals for the Sixth Circuit in Kelley v. Board of Education of City of Nashville, 1959, 270 F.2d 209, certiorari denied 1959, 361 U.S. 924, 80 S.Ct. 293, 4 L.Ed.2d 240.[6] But the all-important issues of integration 'with all deliberate speed' and what constitutes a 'reasonable start towards full compliance' with the ruling of the Supreme Court as required by its Brown decision of May 17, 1954, supra, 347 U.S. 483, 74 S.Ct. 686 can be decided properly only on due consideration of all the pertinent factors and circumstances. The first of the circumstances militating against our sanctioning of the plan approved by the court below is, as we have reiterated, that of the 6813 Negro school children shown as available for integration by Exhibit No. 11, only 25, as demonstrated by the record, registered for admission to the first grades for the Fall term 1959. We point out that assuming that an equal number of Negro school children registered for admission to the first grades for the Fall term 1960, it would follow that less than 1% Of the Negro school children available for integration will have been integrated by the Fall term 1960. The fact that the conclusion made by us in our opinion of July 19 as to the number of Negro school children who presently desire integration has not been seriously contravened by those who are in the best position to do so is very significant. The number of Negro school children, who will be admitted to the Delaware public school system by the Fall term 1961[7] under the plan approved by the court below is minuscule. Indeed the number of Negro school children integraged at the end of five years might be as large as 125 or 1.8% Of 6813 Negro school children shown as available by Exhibit No. 11. Second, if our conclusion as to the limited number of Negro school children who will seek integration at all grades at the Fall term 1961 is correct and that number will not substantially exceed 500, such full integration could be accomplished without too great difficulty. Third, as we have stated, the plan as approved by the court below will completely deprive the infant plaintiffs, and all those in like position, of any chance whatever of integrated education, their constitutional right. Fourth, the plan approved by the court below goes no further than a grade by-grade integration beginning at the first grades and can provide integration only for Negro children presently of very tender years, excluding all others. Fifth, the circumstances of Kelley v. Board of Education of Nashville, supra, are not analogous to those at bar. The number of Negro children involved in the Nashville schools uas substantially larger than the number with which we are concerned in the cases at bar. Nashville is a city of approximately 173,000 persons, of whom more than 28% Are classified as Negroes. Many of the School Districts and High School areas of Delaware with which we are concerned are in rural or semi-rural areas and the number of presently segregated Negro school children involved in the whole of Delaware is much less than the number involved at Nashville. Integration problems are more difficult of solution in heavily populated urban areas. Moreover the City of Nashville lies in the deep South, a part of our Nation where emotional reactions concerning school integration are more intense than in our own State of Delaware. We think that the Court of Appeals for the Sixth Circuit had this fact in mind when itformulated its decision in the Nashville case. Several United States courts also in the South have ordered grade-by-grade integration of the sort approved by the court below where Boards of Education have taken either no steps toward integration or have made but small advances in that direction.[8]
 
 
 16
 In short, integration in the State of Delaware, which already has integrated many of its schools, particularly in the Wilmington metropolitan area, should not be viewed, gauged or judged by the more restrictive standards reasonably applicable to communities which have not advanced as far upon the road toward full integration as has Delaware. To apply shch standards to the Delaware school system is not permissible in the light of the Supreme Court's mandate that state school systems shall proceed to full integration with all deliberate speed and that each state school system shall make a reasonable start toward full compliance. In Brown v. School Board of Topeka, supra,349 U.S. at page 300, 75 S.Ct. at page 756, Mr. Chief Justice Warren stated: 'At stake is the personal interest of the plaintiffs (Negro school children) in admission to public schools as soon as practicable on a nondiscriminatory basis.' The court below and the defendants have overlooked this sentence and the effect which must be attributed to it. We reiterate our opinion that the plan approved by the court below does not meet the standards laid down by the Supreme Court and that the tests of all deliberate speed and a reasonable start toward full compliance, require on consideration of all the circumstances at bar, the formulation of a plan which will provide for the admission to integrated schools at the Fall term 1961 of all Negro school children who seek integration at that time. Such a result in our opinion is the 'practicable' one.
 
 
 17
 In so concluding we point out again that we believe that the defendants have acted in good faith but good faith alone cannot solve their problem or our own. True the defendants must act in good faith to comply with the mandate of the Supreme Court, but they must do more than this. They must proceed to integration with all deliberate speed. Certainly in the plan approved by the court below the accent is on deliberation rather than speed. The defendants must also make a reasonable start toward full compliance. In the cases at bar the step toward full compliance about to be compelled is but a small one. It follows that the plan approved by the court below is not in accord with the legal principles enunciated by the Supreme Court. Mixed questions of fact and law are presented and we are free to review them. We conclude that the defendants, acting in their administrative capacities, have failed to exercise properly the discretion confided to them by the law. We are of the view, however, that the abuse of their discretion by the school authorities does not result from bad faith on their part but has come to pass because they have approached this hard problem unrealistically and with too great a degree of caution.
 
 
 18
 It is obvious from the petitions for rehearing that some, at least, of the petitioning-appellees have not grasped the precise nature of our decision. In our opinion of July 19 we did not summarily order full integration of the Delaware School System at the Fall term 1961. We said that we would direct the entry of an order by the court below requiring the State Board of Education and the State Superintendent of Public Instruction to submit to the court below for its approval on or before December 1, 1960, 'a modified plan which will provide for full integration of all grades of the public schools of Delaware commencing with the Fall term 1961'. We did not state that we would direct the court below to order the interested Local School Boards to cooperate in the formulation of an integration plan. We assumed and we still assume that the court below will dispatch notices to the interested Local Boards calling them into a hearing on the merits of the modified plan when it is submitted. This is what the court below did following the receipt of our mandate based on our opinion handed down in 1958. The modified plan when submitted may or may not meet with the approval of the court below. It may appear that our conclusion as to the comparatively small number of Negro school children who will seek integration in the various respective grades of the school system of Delaware at the Fall term 1961, is erroneous even though we are presently strongly of the contrary opinion. Such integration, viz., of all Negro school children who seek integration, as indicated would constitute integration at all grades of the public school system of Delaware at the Fall term 1961. But the plan submitted to the court below must go further. It must provide also, if it is to meet with our approval, for a wholly integrated educational system of the kind we have indicated whereby, as the number of Negro school children who seek integrated education increases,[9] the integration of these Negro school children can be effected. We do not and cannot state detailed provisions of the plan. We reiterate that the primary duty to create the plan rests on the State Board of Education and on the State Superintendent of Public Instruction.
 
 
 19
 A further point is raised by one of the petitions for rehearing[10] which also requires clarification. We stated that we would direct the court below to order the individual defendants who are members of the Boards of Trustees or of the Boards of Education in the School Districts, named in the respective titles of these cuses, to integrate into the public school system of Delaware, commencing with the Fall term of 1960, the individual infant plaintiffs who shall then actively seek integration. The defendants have construed the words referred to with complete literality. It was not our intention, nor is it our intention now, to exempt the respective individual infant plaintiffs who may presently actively seek integration from the usual processing of the school system relating to their capabilities, scholastic attainments and geographical locations, provided always that that processing is conducted on a racially hon-discriminatory basis. Such processing must, of course, be applied to all children in a well regulated public school system.
 
 
 20
 Another point raised by the same petition for rehearing is not entirely clear to us. The language used seems to suggest that in stating that we desire a plan which will provide for the integration of all grades of the public schools of Delaware we act without authority because in addition to the members of the State Board of Education and the State Superintendent of Public Instruction we have before us as parties defendant on this record only the members of the Local Boards of Trustees or of the Local Boards of Education named in the titles of these cases. It is true that there are many members of Local Boards presently governing segregated or partially segregated schools who are not parties to the instant record but we are not directing the court below to make any order respecting these individuals. But as we have just stated we do have as parties defendant on the present record the members of the State Board of Education and the State Superintendent of Public Instruction and we will, as we have indicated, direct the court below to require these members to prepare a plan of the kind we have ndicated. We think that our authority to do this is plain. The problem of integration in Delaware is not one which can be solved piecemeal. It requires thorough far-seeing over-all treatment by the central school authorities acting with the cooperation of the Local Boards. If a satisfactory modified plan be formulated and submitted to the court below and meets with approval, should the members of the Local Boards involved, not parties to the present record, fail to cooperate in the consummation of the plan, other steps must be taken. We will not assume, however, that there will be a failure of cooperation unless it be made manifest.[11]
 
 
 21
 In view of the fact that more than a month has elapsed since the handing down of our opinion of July 19 the time for the submission of the plan to the court below is extended to December 31, 1960. The petitions for rehearing will be denied.
 
 
 22
 GOODRICH, Circuit Judge dissents.
 
 Amended Judgment
 
 23
 This cause came on to be heard on the record from the United States District Court for the District of Delaware and was argued by counsel.
 
 
 24
 On consideration whereof, it is now here ordered and adjudged by this Court that the judgments of the said District Court in these cases be, and the same are hereby vacated, with costs, and the causes remanded to the District Court with directions to:
 
 
 25
 (1) order the individual defendants, respectively members of the Boards of Trustees or of the Boards of Education of the School Districts as named above, to integrate, commencing with the Fall Term 1960, the respective individual infant plaintiffs who presently actively seek integration, subject, however, to the usual processing of the school system relating to their capabilities, scholastic attainments, and geographical locations; providing nonetheless that that processing is conducted on a racially non-discriminatory basis as set out in the opinion filed concurrently with this judgment;
 
 
 26
 (2) enter an order requiring the members of the State Board of Education of Delaware and the State Superintendent of Public Instruction to submit on or before December 31, 1960 for the approval of the District Court a modified plan of integration which will provide
 
 
 27
 a. for the integration at all grades of the public school system of Delaware, at the Fall Term 1961, and at all subsequent school terms, of all Negro school children who desire integration subject, however, to the usual processing of the school system relating to their capabilities, scholastic attainments, and geographical locations, providing nonetheless that that processing is conducted on a racially non-discriminatory basis as set out in the opinion filed concurrently with this judgment;
 
 
 28
 b. for a 'wholly integrated' school system, as that term is employed in the opinion filed concurrently with this judgment and as provided in the ipinion, whereby adequate wholly integrated school facilities at all grades of the public schools of Delaware shall be provided for all school children, white and Negro, whose attendance at public schools is required by law, subject, however, to the usual processing of the school system relating to their capabilities, scholastic attainments and geographical locations, providing nonetheless that that processing is conducted on a racially non-discriminatory basis as set out in the opinion filed concurrently with this judgment;
 
 
 29
 (3) enter an order requiring that, except as hereinbefore provided with respect to the individual infant plaintiffs, who shall seek to be integrated at the Fall Term, 1960, the continuation of the grade-bygrade integration presently in effect and approved by the District Court until the modified plan to the extent provided in paragraph 2(a) of this judgment and as contemplated in the opinion filed concurrently herewith, be put in operation.
 
 
 30
 GOODRICH, Circuit Judge (dissenting).
 
 
 31
 This is a difficult case to decide. Much harder, for instance, than to determine whether a given profit is ordinary income or capital gain. The reason that it is hard is because the test for its solution is not capable of being stated in categorical terms. The direction is to proceed with desegregation with all deliberate speed. The school authorities in this case may well be charged with proceeding with more deliberation than they have with speed.
 
 
 32
 Nevertheless, I am unable to join with my colleagues in the order which they propose. It would be better, perhaps, if the program submitted to the district judge and approved by him had provided for speedier integration. But a plan was submitted and a plan was approved and has been put into effect. While it will take a comparatively long time before it is completed it, neverthless, provides for steady progress. It seems to me that in view of the local social inertia against any plan at all that the one submitted and approved is as good as we can expect in view of the obstacles to be overcome in making it work. I would, therefore, affirm the judgment of the district court.
 
 
 
 [1]
 Reference to this fact is made in the star note to Judge Layton's supplemental opinion, 173 F.Supp. at page 892
 
 
 [2]
 It should be pointed out, however, that the figure of 1,000 Negro children, given by Exhibit 11, is an estimate based on the number of Negro children who had entered the first grades in the Fall of 1958, whereas the total of 25 Negro children represents the actual number who registered in June 1959, for entrance in September 1959 to the first grades in 'White Schools' which previously had not had plans for desegration approved by the State Board of Education
 We do not have in the record the exact number of Negro children eligible or available for entrance into the first grades on a non-segregated basis in September 1959, but we are of the opinion that the 'Population' figures given in Exhibit 11 are close to the number of Negro children available for desegregated entry into the first grades and that only about 2.5% Of these children applied for such entry.
 
 
 [3]
 Evidence has been introduced to the effect that the intelligence of Negro children in Delaware as demonstrated by intelligence and aptitude tests is less to some degree than that of Caucasian children. We have examined this evidence carefully and we conclude that the asserted disparity in intelligence between Negro and Caucasian children is not of such a degree as to prevent or even to hinder substantially their mutual desegregated education. Some adjustments may be necessary from grade to grade but this is a matter which the competent Delaware school authorities will be able to handle adequately administratively
 
 
 [4]
 The court below will retain jurisdiction and any plan approved may be modified by its order from time to time
 
 
 [5]
 We point out that there are now in Delaware a sufficient number of public schools white and Negro to accommodate all the school children of Delaware. Total integration would be possible by using all present schools and employing all present teachers. The reason why such a plan is not presently ordered is because some Negro schools are substantially inferior to corresponding white schools. See the opinion of the Supreme Court of Delaware in Gebhart v. Belton, 1952, 33 Del. 144, 91 A.2d 137. See also Article X of the Constitution of Delaware, Del.C.Ann
 
 
 [6]
 Denial of certiorari by the Supreme Court does not signify approval or disapproval of the decision of the court below. See the opinion of Mr. Justice Frankfurter in Maryland v. Baltimore Radio Show, Inc., 1950, 338 U.S. 912, 917-919, 70 S.Ct. 252, 94 L.Ed. 562
 
 
 [7]
 That number, of course, will comprise the Negro school children newly integrated in the first grades at the Fall term 1960 plus those Negro school children, who, integrated at the Fall term 1959, have been promoted to the second grades in 1961
 
 
 [8]
 See for example Bush v. Orleans Parish School Board, No. 3630, Civil Action, D.C.E.D.La., order of May 16, 1960, and compare 1956, 138 F.Supp. 337, affirmed 5 Cir., 1957, 242 F.2d 156; and Ross v. President of the Board of Trustees of the Houston Independent School District, No. 10,444, Civil Action, decided without opinion, August 4, 1960
 
 
 [9]
 As it will increase as educational and sociological, as well as economic conditions improve for the Negroes of Delaware
 
 
 [10]
 We refer to the petition for rehearing filed by the School Boards of Seaford, Laurel and Milford, and by the Board of Trustees of the Greenwood School
 
 
 [11]
 We take this occasion to point out, in connection with the foregoing, that the suits at bar are spurious class suits. See Independence Shares Corp. v. Deckert, 3 Cir., 1939, 108 F.2d 51, 55, reversed on other grounds, 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189, and National Hairdressers' & C. Ass'n v. Philad Co., D.C.Del.1941, 41 F.Supp. 701, 707-709, affirmed 3 Cir., 1942, 129 F.2d 1020