Leslie **TAYLOR** and Kevin Taylor, minors, by Wilbert Taylor and Hallie Taylor, their parents and next friends, et al., Plaintiffs-Appellees,

v.

**BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW ROCHELLE et al.,** Defendants-Appellants.

No. 26901.

United States Court of Appeals Second Circuit.

Argued March 20, 1961.

Decided April 13, 1961.

Moore, Circuit Judge, dissented.

Thurgood Marshall, New York City (Paul B. Zuber, Constance Baker Motley and Jack Greenberg, New York City, on the brief), for plaintiffs-appellees.

Murray C. Fuerst, New Rochelle, N. Y. (Julius Weiss, New York City, on the brief), for defendants-appellants.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

In this action, eleven Negro children, proceeding through their parents, seek declaratory and injunctive relief against the Board of Education of New Rochelle, New York, and the Superintendent of Schools. On January 24, 1961, Judge Kaufman signed an opinion, 191 F.Supp. 181, stated to constitute the District Court's findings of fact and conclusions of law, which held that various acts of the defendants violated plaintiffs' constitutional rights as defined in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and later decisions of the Supreme Court. The opinion ended with two paragraphs, quoted in the margin,[1] in which the District Judge stated, among other things, that he deemed it "unnecessary at this time to determine the extent to which each of the items of the relief requested by plaintiffs will be afforded," [191 F.Supp. 198] but would defer such determination until the Board had presented, on or before April 14, 1961, "a plan for desegregation in accordance with this Opinion, said desegregation to begin no later than the start of the 1961–62 school year."

■■ Pursuant to authorization by a 5–3 vote at a meeting of the Board of February 7, 1961, defendants appealed to this Court on February 20, 1961. On March 7, 1961, the District Judge denied an application by them to extend the date for filing a plan pending determination of the appeal, as well as a motion by plaintiffs for an order directing defendants immediately to assign plaintiffs to elementary schools other than the Lincoln School. Thereupon, defendants moved this Court for a stay of the direction to file a plan, pending the appeal. At the hearing on that motion, the Court ques-

1.            "The Decree

"In determining the manner in which the Negro children residing within the Lincoln district are to be afforded the op-opportunities guaranteed by the Constitution, I will follow the procedure authorized by the Supreme Court in Brown v. Board of Education, 349 U.S. 294 [75 S. Ct. 753, 99 L.Ed. 1083] (1955), and utilized by many district courts in implementing the Brown principles. Thus, I deem it unnecessary at this time to determine the extent to which each of the items of relief requested by plaintiffs will be afforded. Instead, the Board is hereby ordered to present to this Court, on or before April 14, 1961, a plan for desegregation in accordance with this Opinion, said desegregation to begin no later than the start of the 1961–62 school year. This court will retain jurisdiction of this action until such plan has been presented, approved by the court, and then implemented.

"The foregoing Opinion will constitute the court's findings of fact and conclusions of law."

tioned whether the appeal had not been prematurely taken and was not, therefore, beyond the appellate jurisdiction conferred upon the Court by Congress. Later we directed the filing of briefs on this issue and extended the Board's time to file the plan pending the Court's decision on the question of jurisdiction and in any event to May 3, 1961. Appellees now challenge our power to hear an appeal at this stage, but the question is one this Court was obliged to raise in any event, Mitchell v. Maurer, 1934, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338, and it is better that this be determined now rather than after further time has elapsed. Upon full consideration, we conclude that we have no power to entertain the Board's appeal until the District Court has finished its work by directing the Board to take or refrain from action.

Familiar decisions of the Supreme Court establish the controlling principles. "Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all." Cobbledick v. United States, 1940, 309 U.S. 323, 324–325, 60 S.Ct. 540, 541, 84 L.Ed. 783. "The foundation of this policy is not in merely technical conceptions of 'finality.' It is one against piecemeal litigation. 'The case is not to be sent up in fragments * * *' Luxton v. North River Bridge Co., 147 U.S. 337, 341 [13 S.Ct. 356, 358, 37 L.Ed. 194]. Reasons other than conservation of judicial energy sustain the limitation. One is elimination of delays caused by interlocutory appeals." Catlin v. United States, 1945, 324 U.S. 229, 233–234, 65 S.Ct. 631, 634, 89 L.Ed. 911.

█ A "final decision" within 28 U.S.C. § 1291, the basic statute authorizing appeals to the courts of appeals, and its predecessors going back to §§ 21 and 22 of the Act of Sept. 24, 1789, c. 20, 1 Stat. 73, 83–84, "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, supra, 324 U.S. at page 233, 65 S.Ct. at page 633. Plainly Judge Kaufman's decision of January 24, 1961 does not fit that description. It constituted only a determination that plaintiffs were entitled to relief, the nature and extent of which would be the subject of subsequent judicial consideration by him. What remained to be done was far more than those ministerial duties the pendency of which is not fatal to finality and consequent appealability, Ray v. Law, 1805, 3 Cranch 179, 180, 2 L.Ed. 404. An order adjudging liability but leaving the quantum of relief still to be determined has been a classic example of non-finality and non-appealability from the time of Chief Justice Marshall to our own, The Palmyra, 1825, 10 Wheat. 502, 6 L.Ed. 375; Barnard v. Gibson, 1849, 7 How. 650, 12 L.Ed. 857; Leonidakis v. International Telecoin Corp., 2 Cir., 1953, 208 F.2d 934; 6 Moore, Federal Practice (1953 ed.), p. 125 and fn. 5, although in all such cases, as here, this subjects the defendant to further proceedings in the court of first instance that will have been uncalled for if that court's determination of liability is ultimately found to be wrong. Recognizing that this may create hardship, Congress has removed two types of cases from the general rule that appeals may not be taken from decisions that establish liability without decreeing a remedy—namely, decrees "determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed," 28 U.S.C. § 1292(a) (3), added by the Act of April 3, 1926, c. 102, 44 Stat. 233, and "judgments in civil actions for patent infringement which are final except for accounting"; 28 U.S.C. § 1292(a) (4), added by the Act of Feb 28, 1927, c. 228, 44 Stat. 1261. Congress' specification of these exceptions, manifestly inapplicable here, underscores the general rule.

This salutary Federal rule requiring finality as a condition of appealability has become subject, over the years, to exceptions other than those just mentioned, some fashioned by the courts and

others enacted by Congress. The instant appeal does not come within any.

██ Of the judicially created exceptions, the one referred to in Dickinson v. Petroleum Conversion Corporation, 1950, 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299, namely, that under some circumstances a decree may be final as to one party although the litigation proceeds as to others, is so manifestly inapplicable that we would not mention it if appellants had not. Similarly inapplicable is the rule in Forgay v. Conrad, 1848, 6 How. 201, 12 L.Ed. 404, that a judgment directing a defendant to make immediate delivery of property to a plaintiff is appealable despite a further provision for an accounting. The scope of this doctrine is narrow and rests upon "the potential factor of irreparable injury," 6 Moore, Federal Practice (1953 ed.), p. 129—just how narrow is shown by decisions refusing to apply it to a decree that adjudged rights in property but made no disposition of the property pending a further hearing relating to its precise identification, Rexford v. Brunswick-Balke-Collender Co., 1913, 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864, or to a decree awarding possession to the United States under eminent domain but reserving the question of compensation, Catlin v. United States, supra, 324 U.S. at page 232, 65 S.Ct. at page 633, overruling our contrary decision in United States v. 243.22 Acres of Land, 2 Cir., 1942, 129 F.2d 678. See Republic Natural Gas Co. v. State of Oklahoma, 1948, 334 U.S. 62, 68 S.Ct. 972, 92 L.Ed. 1212. Here, while we understand defendants' dislike of presenting a plan of desegregation and attending hearings thereon that would be unnecessary if the finding of liability were ultimately to be annulled, and also the possibly unwarranted expectations this course may create, this is scarcely injury at all in the legal sense and surely not an irreparable one. Equally inapposite is the doctrine of Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 545–547, 69 S.Ct. 1221, 1225, 93 L. Ed. 1528, also advanced by appellants, permitting review of orders "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Here the issue sought to be reviewed, far from being collateral to the main litigation, represents the very findings and conclusions upon which any final judgment against the defendants must rest.

██ Turning to statutory exceptions, the only one that could be, and is, claimed to be applicable is 28 U.S.C. § 1292(a) (1). That gives us jurisdiction over "Interlocutory orders of the district courts * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." The term "injunction" includes not only an order prohibiting certain conduct during the pendency of litigation but also one that commands it. Societe Internationale, etc. v. McGrath, 1950, 86 U.S. App.D.C. 157, 180 F.2d 406.

Appellants contend Judge Kaufman's decision granted both a prohibitory and a mandatory injunction. They say the order "in effect" prohibited them from proceeding with their plans to reconstruct the Lincoln School and commanded them to submit a plan. If the former were so, the order would clearly be appealable; we have searched the opinion for substantiation but in vain. To be sure, the opinion says the proposed reconstruction alone might aggravate the problem rather than ameliorate it; and we fully appreciate why the Board may hesitate to proceed in the light of this, as, indeed, it might have if the opinion had not yet been rendered. But as yet we can only conjecture whether the District Court will enjoin the rebuilding or permit this if accompanied by other acts; and a defendant's apprehension that conduct on his part may ultimately be restrained is not an "injunction" within § 1292(a) (1).

■■ Whether Judge Kaufman's direction for the submission of a plan on April 14 is a mandatory injunction requires, in the first instance, interpretation of what was said. It is common practice for an equity judge first to reach a conclusion as to liability and to determine the appropriate relief later in the event of an affirmative finding. If the District Judge had said in his opinion only that a further hearing would be held at which the parties would have an opportunity to express themselves as to relief, by testimony, argument, or both, it would be entirely plain that he had not granted a mandatory injunction, and this would be so even if he had also stated that, in the interest of orderly procedure, he would expect the defendants to take the lead at the hearing. In substance this is what Judge Kaufman did. Although the penultimate paragraph of his opinion is headed "The Decree," the context makes clear that the few sentences that follow were not, themselves, decretal, but simply explained how he planned to fashion his decree. To be sure, the opinion used the word "ordered" with respect to the filing of a plan, just as courts often "order" or "direct" parties to file briefs, findings and other papers. Normally this does not mean that the court will hold in contempt a party that does not do this, but rather that if he fails to file by the date specified, the court may refuse to receive his submission later and may proceed without it. That this was what Judge Kaufman intended is confirmed by his later opinion denying an extension of the April 14 date, in which he spoke of having "specifically requested the Board to submit its plan for desegregation of the *Lincoln School*" and of having given the Board "an opportunity to submit" such a plan. Moreover, even if the order was intended to carry contempt sanctions, which we do not believe, a command that relates merely to the taking of a step in a judicial proceeding is not generally regarded as a mandatory injunction, even when its effect on the outcome is far greater than here, 6 Moore, Federal Practice (1953 ed.) pp. 46–47.[2] For just as not every order containing words of restraint is a negative injunction within 28 U.S.C. § 1292(a) (1), Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233; Fleischer v. Phillips, 2 Cir., 1959, 264 F.2d 515, 516, certiorari denied 1959, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030; Grant v. United States, 2 Cir., 1960, 282 F.2d 165, 170, so not every order containing words of command is a mandatory injunction within that section.

■ Our review of the cases that have reached appellate courts in the wake of Brown v. Board of Education, supra, and its supplement, 1955, 349 U.S. 294, 75 S.Ct. 753, has revealed only one in which jurisdiction may have been taken under such circumstances as here. In Clemons v. Board of Education of Hillsboro, 6 Cir., 1956, 228 F.2d 853; Brown v. Rippy, 5 Cir., 1956, 233 F.2d 796; Booker v. State of Tennessee Board of Education, 6 Cir., 1957, 240 F.2d 689, and Holland v. Board of Public Instruction, 5 Cir., 1958, 258 F.2d 730, the appeals were from final orders denying injunctive relief. In Aaron v. Cooper, 8 Cir., 1957, 243 F.2d 361, an injunction was denied because of a voluntary plan offered by the Little Rock School District which the District Court found satisfactory, but jurisdiction was retained; since the order denied an injunction it was therefore appealable whether it was deemed final or interlocutory.[3] In Board

2. For clarity we note what ought to be obvious, namely, that the Board's submission of a plan of desegregation implies no acceptance of the District Judge's determinations of fact and law and no waiver of a right to appeal—any more than does the action of a losing party in any suit, either at the request of the court or of his own volition, in submitting a form of judgment conforming with findings and conclusions from which he dissents.

3. Later cases involving the Little Rock situation, Thomason v. Cooper, 8 Cir., 1958, 254 F.2d 808; Aaron v. Cooper, 8 Cir., 1958, 257 F.2d 33, affirmed Cooper v. Aaron, 1958, 358 U.S. 1, 78

of Supervisors of L. S. U., etc. v. Ludley, 5 Cir., 1958, 252 F.2d 372, certiorari denied, 1958, 358 U.S. 819, 79 S.Ct. 31, 3 L.Ed.2d 61; Board of Supervisors of L. S. U., etc. v. Wilson, 1951, 340 U.S. 909, 71 S.Ct. 294, 95 L.Ed. 657, and Evans v. Buchanan, 3 Cir., 1958, 256 F.2d 688,[4] the District Court had issued mandatory injunctions directing the admission of Negro students. In Boson v. Rippy, 5 Cir., 1960, 275 F.2d 850, the appeal was from a refusal to modify an injunction so as to advance the dates of desegregation, this falling within another provision of § 1292(a) (1). The single case that may support appealability here is an unreported memorandum in Mapp v. Board of Education of Chattanooga, in which the Sixth Circuit denied a motion to dismiss an appeal, without discussion save for a reference to 28 U.S.C. § 1291 and § 1292(a) (1) and a "cf." to Boson v. Rippy, supra. We doubt that appellees' attempt to distinguish the Mapp case is successful, but we do not find the memorandum persuasive. Boson v. Rippy does not support the decision, for the reason indicated, as the manner of its citation perhaps recognized; and we do not know what it was that the judges found in the statutes to support their conclusion of appealability. Moreover, the subsequent proceedings in the Mapp case, where the District Court has already rejected the plan directed to be filed and required the submission of a new one, with a second appeal taken from that order although the first appeal has not yet been heard, indicate to us the unwisdom of following that decision even if we deemed ourselves free to do so.

There is a natural reluctance to dismiss an appeal in a case involving issues so important and so evocative of emotion as this, since such action is likely to be regarded as technical or procrastinating. Although we do not regard the policy question as to the timing of appellate review to be fairly open, we think more informed consideration would show that the balance of advantage lies in withholding such review until the proceedings in the District Court are completed. To stay the hearing in regard to the remedy, as appellants seek, would produce a delay that would be unfortunate unless we should find complete absence of basis for any relief—the only issue that would now be open to us no matter how many others might be presented, since we do not know what the District Judge will order—and if we should so decide, that would hardly be the end of the matter. On the other hand, to permit a hearing on relief to go forward in the District Court at the very time we are entertaining an appeal, with the likelihood, if not indeed the certainty, of a second appeal when a final decree is entered by the District Court, would not be conducive to the informed appellate deliberation and the conclusion of this controversy with speed consistent with order, which the Supreme Court has directed and ought to be the objective of all concerned. In contrast, prompt dismissal of the appeal as premature should permit an early conclusion of the proceedings in the District Court and result in a decree from which defendants have a clear right of appeal, and as to which they may then seek a stay pending appeal if so advised. We— and the Supreme Court, if the case should go there—can then consider the decision of the District Court, not in pieces but as a whole, not as an abstract declaration inviting the contest of one theory against another, but in the concrete. We state all this, not primarily as the reason for our decision not to hear an appeal at this stage, but rather to demonstrate what

S.Ct. 1401, 3 L.Ed.2d 5; Aaron v. Cooper, 8 Cir., 1958, 261 F.2d 97, concerned attempts to frustrate or delay effectuation of the plan previously approved.

4. The Court of Appeals noted in the Evans opinion, 256 F.2d at page 691, that in one of the seven cases the District Court had earlier made an order directing the submission of a plan from which "an appeal * * * was taken to this court but was not prosecuted and accordingly the record was returned to the court below." The later appeal, Evans v. Ennis, 3 Cir., 1960, 281 F.2d 385, was from a final order approving a plan which plaintiffs deemed inadequate.

we consider the wisdom embodied in the statutes limiting our jurisdiction, which we would be bound to apply whether we considered them wise or not.

Accordingly, the appeal is dismissed for want of appellate jurisdiction at this time. Although it should not be necessary to do so, we add, from abundant caution, that this dismissal involves no intimation on our part with respect to the propriety or impropriety of the determination of the District Court. If defendants feel that the time that has been required for the disposition of this issue compels them to request a further extension of the date for presenting a plan, they should make their application to the District Judge.

MOORE, Circuit Judge (dissenting).

This case comes before us on a motion for a stay of that portion of a decree wherein the Board of Education of New Rochelle is "ordered to present to this Court [Irving R. Kaufman, D. J.], on or before April 14, 1961, a plan for desegregation [1] in accordance with this [his] Opinion * * *." An appeal "from the judgment entered in this action on January 24, 1961" (the date judgment was entered by the Clerk upon the trial court's opinion which was to constitute the court's findings of fact and conclusions of law) is now pending in this court and representations have been made that it can be heard at a comparatively early date. Upon oral argument of the motion, the court on its own motion raised the question of appealability; the parties themselves initially did not present this issue either by motion or on argument. How the panel of this court which might have heard the appeal would have ruled on the question of appealability is academic because by the decision of the majority of this panel, they will not have that opportunity. I would have deferred to them and let them have the privilege of deciding whether they should hear and decide on the merits. However, having to face this question now, I am of the opinion that an appeal may properly be taken from the judgment as entered.

The complaint, charging maintenance of "a racially segregated public elementary school," "ghettos," "minority racial groups," and denial of "due process" and "equal protection," seeks injunctive relief, both affirmative and negative, against the Board:

A. Declaring illegal and unconstitutional the City's "neighborhood school" policy (whereby children attend the school in the area of their residence);

B. Enjoining attendance in a "racially segregated" school;

C. Requiring registration in a "racially integrated" school;

D. Enjoining the construction of a public school approved for construction; and

E. Enjoining prosecution of an action commenced by the defendants.

The character of the action as an injunction proceeding was clearly established by the allegations and the relief sought. A trial was held and a judgment was entered. The trial court throughout its opinion referred to the injunctive relief sought, which was granted in both mandatory and prohibitory form.

Section 1292(a) (1) gives this court appellate jurisdiction over interlocutory orders "granting * * * injunctions." As the majority concedes, the term "injunction" embraces an order commanding as well as prohibiting conduct. The decree (entered as a judgment) in my opinion definitely is within this category. The words are "the Board is hereby ordered to present to this Court * * * a plan for desegregation in accordance with this Opinion." The majority say that if the order in effect prohibited the Board from reconstructing the Lincoln

[1]. The schools of New Rochelle have never been on a segregated basis in the sense that any Negro pupil has been denied admission to any school by reason of being a member of the Negro race and as the term is used in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, and related cases. All the schools had Negro pupils in their student bodies.

School, the order would be "clearly appealable." Yet in the "Opinion" which is to serve as a guide for a Plan, the trial court has said, "this [the rebuilding] seems the one sure way to render certain continued segregation at Lincoln." How can this statement, together with the finding that "it is most difficult to conceive of the rebuilding of the Lincoln School as good-faith compliance with an obligation to desegregate," be reconciled with the thought that no injunction is intended. Here is virtually a pre-hearing judgment that any Plan which incorporates a rebuilding of the school on its present site will be inconsistent with the court's conception of desegregation. My colleagues cannot seriously believe that these words are not words of restraint and should not be regarded as an injunctive deterrent from building a new school. No Board would spend thousands of dollars for a new school only to be directed eventually to tear it down and build it elsewhere.

The mandatory provisions of the judgment are both direct and implied. If "the presence of some 29 white children certainly does not afford the 454 Negro children in the school the education and social contacts and interaction envisioned by Brown," how many additional white children will be required to accomplish this result?[2] And where will they come from? The trial court does not "conceive it to be the court's function to interfere with the mechanics of the operation of the New Rochelle school system," and "did not strike down the neighborhood school policy," but found it to be "valid only insofar as it is operated within the confines established by the Constitution." Yet the Board must submit

an acceptable Plan in the light of the Court's Opinion to "avoid that very eventuality," namely, "the Court's taking over the running of the New Rochelle school system."

Reference to these situations is made only because I believe that they relate to the injunctive character of the judgment. It is this character which determines appealability—the only question now being considered. The merits must be considered later upon hearings in which it would appear that the Lincoln School and the Negro pupils will not be alone. Already notice has been served that "the Ward School is predominently [sic] Jewish and the Columbus School predominently [sic] Italian in the composition of the student bodies." The parents of the children "desire that action be brought to desegregate[3] both schools." Warning is given that "if plans are made to correct the situation existing in the Lincoln School, brought about by the neighborhood school concept, that such plans also bear in mind the religious and other inbalances [sic] also existing." When all the racial, religious and "other inbalances" have been thoroughly aired, although premature at this time, the hope is expressed that somehow the American philosophy that constitutional rights are the vested heritage of all our citizens and are not the exclusive property of any racial or religious group to be used for their own particular interests may find its way into the Plan—even if only in a footnote.[4]

Because I believe that the statute permits an appeal from this injunctive judgment, I would grant the stay, and I dissent from the dismissal of the appeal.

---

2. How can any court be sure that mere numbers can effect these assumed advantages?

3. Here the word is used to indicate a predominant percentage of any race—quite a different meaning from that intended in the true "desegregation" cases.

4. Every assurance of this approach is given in the two well-reasoned opinions below. My dissent is based solely upon the belief that under the law the judgment entered in this case granting the relief specified therein is appealable.