Brenda EVANS et al., Plaintiffs,

v.

Madeline BUCHANAN et al., Defendants.

Civ. A. Nos. 1816–1822.

United States District Court
D. Delaware.

June 26, 1961.

322

Louis L. Redding and Leonard L. Williams, Wilmington, Del., for plaintiffs.

Januar D. Bove, Jr., Atty. Gen., of State of Delaware, for State Bd. of Education and State Superintendent of Public Instruction.

James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Local Bds. of Milford, Laurel and Seaford Special School Dists.

Everett F. Warrington, Georgetown, Del., for Bd. of Trustees of Milton Consolidated School Dist. No. 8; Ellendale Elementary Public School Dist. No. 195; Lincoln Elementary Public School Dist. No. 194; Milton Elementary Public School Dist. No. 196 and Slaughter Neck Elementary Public School Dist. No. 193.

N. Max Terry, Dover, Del., for Bd. of Trustees of Caesar Rodney Special School Dist.

CALEB M. WRIGHT, Chief Judge.

This is a class action instituted by Negro children to compel their admission into public schools of the State of Delaware on a racially nondiscriminatory basis. Summary judgment for plaintiffs was granted by Judge Leahy in 1957. Evans v. Buchanan, D.C.D.Del.1957, 152 F.Supp. 886. In 1959 a proposed plan of integration submitted by the State Board of Education was approved by Judge Layton with certain modifications. D.C., 172 F.Supp. 508; D.C., 173 F.Supp. 891. Plaintiffs appealed, and the Court of Appeals found the approved plan "does not effect desegregation 'with all deliberate speed' and is not a 'reasonable start toward full compliance' with the ruling of the Supreme Court in its Brown opinion of May 17, 1954 [Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873]." Evans v. Ennis, 3 Cir., 1960, 281 F.2d 385, 387.

The mandate of the Court of Appeals required that defendants admit the individual, named, infant plaintiffs actively seeking integration. It further ordered the members of the State Board of Education of Delaware and the State Superintendent of Public Instruction to submit a plan for approval by this Court providing generally:

(A) for the integration at all grades of the public school system at the fall term 1961, and at all subsequent school terms, of all Negro school children who desire integration subject to the usual processing of the school system; and

(B) for a "wholly integrated" school system, whereby adequate school facilities at all grades will be provided on a racially nondiscriminatory basis.

The mandate of the Court of Appeals envisages two separate but parallel streams flowing concurrently toward the same goal, a "wholly integrated" school

system in which all students compelled by law to attend Delaware public schools will receive education on a racially non-discriminatory basis.[1] Part (A) of the plan must allow Negro students desiring integration to transfer immediately to white or integrated schools as a matter of right subject only to the usual and nondiscriminatory processing of the school system. Part (B), however, looks to the future and must provide for the ingredients of a wholly integrated system. It must further look to the interim period when the number of Negro students desiring integration increases and provide adequate facilities and procedures to accommodate them.

With certain modifications, the plan submitted by defendants is approved as to both aspects.

(A) – Plan of Integration for Students Presently Desiring It.

■ Part (i) of defendants' proposed plan provides for the registration of Negro students desiring to transfer to white or integrated schools. Plaintiffs have objected to this "special registration" as they term it. Their objection is not well-taken for two reasons. First, defendants have in their brief [2] and at oral argument assured the Court this registration applies to all pupils, white and Negro, entering the first grade or transferring within a school district. Second, because the Court of Appeals has ordered immediate integration only of those pupils actively seeking it, some procedure must be

devised so as to determine who they are.[3] Plaintiffs have not suggested any method which would be more satisfactory to them. Part (i), with certain other modifications as to form rather than substance, will be approved.

■■ Part (ii) of defendants' plan provides that such transfers shall be subject to the usual processing of the school system which shall take into account the adequacy of the facilities of the receiving schools and such rules and regulations as relate to the capabilities of the pupils desiring transfer, their scholastic attainments, and geographical location. Several modifications must be made. First, the Court of Appeals concluded the number of Negro pupils who will presently seek integration will not overtax the educational facilities of the State. In view of this finding, transfers should not be subject in the first instance to such a test. Nevertheless, the Court is retaining jurisdiction of this cause, and should it appear that the influx is greater in particular instances than was anticipated, the Court will entertain an appropriate motion for temporary relief from its decree.[4] Second, it must be made clear that the standard of geographical location relates only to the question of which white or integrated school the pupil desiring transfer shall attend. It may not, for instance, be used by local authorities to deny integration because the pupil seeking it lives nearer to a presently wholly colored school than to white or

---

1. The Court of Appeals noted there are presently a sufficient number of schools and teachers, white and Negro, to accommodate all Delaware school children. It did not order total integration only because some Negro schools are substantially inferior to corresponding white schools. 281 F.2d 385, 392 note 2.

2. Brief of State Board, p. 2.

3. Special registration will be necessary where the transfer is from one district to another and there is instruction at the pupil's grade level in the sending district. Delaware law presently prohibits such transfers, although they must now be allowed where applied for pursuant to this Court's decree. See note 5, infra, and accompanying text. Such a registration appears necessary, however, for this is the only workable scheme for ascertaining those desiring integration which has been presented to the Court.

4. It should be noted in passing that the availability of adequate facilities cannot be a permanent prerequisite to integration. The weight to be given this factor by a court necessarily lessens as time passes. Moreover, even in the event of overcrowding such as to require a temporary modification of this decree, the determination as to which transfer applicants will be accepted must be made in a nondiscriminatory fashion as between white and Negro transfers.

integrated facilities. This must be made clear in the plan. Third, part (ii) should explicitly provide that the "usual processing" be conducted on a nondiscriminatory basis.

■ Part (iii) of defendants' plan provides that in districts having both white and Negro schools, attendance areas shall be established on a nondiscriminatory basis. It establishes other procedures not relevant here. While the Court does not disapprove these provisions, it is not appropriate to include such generalized schemes in this plan. Because the Court is retaining jurisdiction, any school district, or other appropriate body, desiring to establish such attendance areas or other procedures designed to effectuate integration, may appear before this Court at any time and present its plan. Upon approval, the district will then be exempted from the transfer provisions of this Court's decree.

■ Part (iv) of defendants' plan relates to the so-called Tuition Act, 14 Del. C.Ann. § 602 (1960 Cumm.Supp.),[5] which prohibits the transfer of a pupil from one district to another when the sending district has instruction at his grade level. It further conditions permissible transfers on the payment of tuition by the sending district. Because school districts in some instances have been established on a segregated basis and are thus wholly Negro or wholly white, this statute would effectively prohibit or qualify some transfers contemplated by this plan. Part (iv), as submitted by defendants, provides in effect the provisions of the Tuition Act shall apply to all transfers under this plan absent an act of the Delaware General Assembly or an order of this Court. The Tuition Act is not discriminatory on its face, for it is applicable to all transfers between districts, whether they be segregated or integrated.

Because of this, it does not violate the 14th Amendment of the United States Constitution, except to the extent it prohibits or conditions effectuation of the plan presently before the Court. But to that extent, and that extent only, it can be of no effect. The plan should so provide.

■ Part (v) of defendants' plan purports to establish nondiscriminatory rules relating to "migrants". Nothing in the present plan is intended to prohibit nondiscriminatory procedures for the education of so-called migrant children. There is also no authority in this Court to establish or approve any such procedures so long as they do not relate to the problem of integration. Because of this, part (v) must be excluded.

■ Part (vi) relates to transportation and will be approved with one modification. It should explicitly state that the transportation for pupils transferred to white or integrated schools pursuant to this plan will be provided on a racially nondiscriminatory basis.

Part (A), therefore, as modified and renumbered, will read as follows:

(A) Commencing with the start of the fall term, 1961, all public school districts in the State of Delaware shall admit all Negro school children who desire desegregation as pupils on a racially nondiscriminatory basis subject to the following rules and regulations:

(i) The State Board of Education will provide for a registration in the State Board Unit Schools for Negro pupils desiring to transfer and enroll in white or integrated schools, which registration shall be conducted by the State Department of Public Instruction each year. In the Special School Districts, a similar registration will be conducted by the superintendents who shall be charged with

---

5. "* * * The Board of Education or Board of School Trustees of any sending district shall not approve the transfer of any pupil to any receiving district when such sending district provides instruction at the grade level for which application for transfer is made. A school district receiving any pupil who is a resident of another school district shall collect a tuition charge * * * such tuition charge shall be paid by the Board * * * of the school district in which the pupil is a resident * * *." 14 Del.C.Ann. § 602(a) (1960 Cumm.Supp.).

the responsibility of securing such information as may be required by the State Board of Education.

(ii) All such transfers shall be allowed subject only to the usual processing of the school system relating to the capabilities of the pupils desiring transfer, their scholastic attainments, and geographical locations, providing nonetheless, that the processing is conducted on a racially nondiscriminatory basis. No pupil desiring to transfer from a colored school to a white or integrated school shall be denied admission on the grounds that the Negro school is nearer to his place of residence.

(iii) Transportation for students transferred pursuant to this plan shall be provided according to the Rules and Regulations of the State Board of Education and on a racially nondiscriminatory basis.

(iv) To such extent as 14 Del.C.Ann. § 602 (1960 Cumm.Supp.) would prohibit, condition, or otherwise qualify the pupil transfers contemplated under this plan, it is hereby declared violative of the 14th Amendment of the United States Constitution and of no effect.

(B) – Plan Looking Toward a Wholly Integrated School System.

■ The main element of this aspect of defendants' proposed plan lies in their submission and recommendation of a proposed new school code to the General Assembly of the State of Delaware. The details of the proposed code are not important here, for it suffices to say racial discrimination in public education is eliminated. Nor does the Court find it necessary or proper to dissect and evaluate all aspects of the proposed code. So long as it eliminates all distinctions in public education based on race, it satisfies the requirements of the Constitution of the United States.

The principal legal question here is whether, at this stage, the mere submission of proposed legislation to the General Assembly satisfies the mandate of the Court of Appeals. Plaintiffs object to this aspect of the plan on the grounds that it conditions total integration upon speculative legislative action. This objection is not well-taken for several reasons.

In its opinion, the Court of Appeals stated it believed the people of Delaware would perform their duties under the law. Such a presumption alone justifies this method as a first step toward the ultimate goal of a wholly integrated school system. Moreover, the present Delaware school system is a crazy-quilt pattern of districts and laws governing education. Even aside from the problem of integration, it may well be in need of a legislative overhaul. In any case, the most orderly process of integration, and clearly the one having the least adverse effects upon all students, white and Negro, can be achieved through legislative action. There is no doubt in the Court's mind but that the Delaware General Assembly, acting with the advice of the State Board and State Superintendent, should have the first opportunity to examine and pass upon the many different methods by which the ultimate goal can be achieved.

Plaintiffs are correct, however, in asserting that state legislative action cannot be a prerequisite to the effectuation of the constitutional rights in question. In oral argument, the Attorney General has necessarily agreed with this legal principle. Nevertheless, it cannot be stressed too much that there is nothing in either aspect of the plan herein approved by the Court which is not subject to change should change appear warranted. Indeed, the Court anticipates many modifications will become necessary in the future. But the practicability and effectiveness of any plan can be determined only through experience gained while it is in operation. Indeed, there is probably no legal problem today in which speculation, although at times unavoidable, is of so little value, and actual experience more necessary, than in the one now before the Court. This Court cannot, and will not, presume at this time that the appropriate authorities

will fail in their duties. Nor can finalized preparations for a wholly integrated system be outlined until the Court and the parties know fully what practical educational problems, involving facilities, teachers, redistricting and the like, will arise and how the proper authorities, with their years of experience in the field of education, will act to meet them. Part (A) of this plan, as contemplated by the Court, will answer many of these questions and crystallize many of these problems. In many respects, it will serve as the laboratory in which Part (B) will be conceived and reduced to practice. It may also, in some areas, actually result in the ultimate goal of a wholly integrated system.[6]

The plan submitted by defendants, as modified, is approved.

An order should be submitted in conformity with this opinion.

---

6. There has been some indication that certain districts would prefer to institute orderly, total integration now rather than proceed further with the transfer provisions of Part (A). This, of course, may be done by submitting the local plan to this Court for approval.