**Brenda EVANS et al., Plaintiffs,**

v.

**Madeline BUCHANAN et al., Defendants.**
**Civ. A. Nos. 1816–1822.**

United States District Court
D. Delaware.

Aug. 29, 1962.

Louis L. Redding, of Redding & Williams, Wilmington, Del., for 19 petitioning children.

Irving Morris, of Cohen & Morris, and Leonard L. Williams, of Redding & Williams, Wilmington, Del., for 9 petitioning children.

Sidney Clark, Wilmington, Del., for the Millside Board.

Januar D. Bove, Jr., Atty. Gen., of the State of Delaware, for the State Board of Education of the State of Delaware.

James M. Tunnell, Jr., and Walter K. Stapleton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for the Board of School Trustees of School District No. 47, Rose Hill-Minquadale.

WRIGHT, Chief Judge.

This case raises further problems concerning the mandate of the Supreme Court in Brown v. Board of Education.[1] Petitioners, 9 Negro children, have asked this court to allow them to transfer from the all Negro Dunleith School administered by the Millside School District, to the integrated Rose Hill Elementary School which is under the jurisdiction of the Rose Hill-Minquadale School District, No. 47. Named defendants include the State Board of Education, and the Rose Hill-Minquadale District. The latter has also petitioned this court seeking instructions concerning whether they should allow the 9 children to transfer and whether they should allow 19 Negro students residenced in the Millside District to continue attending the Rose Hill School. A detailed exposition of the facts is necessary to an understanding of the issues posed.

Delaware had, before the decision in Brown, adhered to a strict, segregationist policy. The State laws establishing the separate but equal doctrine for education were declared unconstitutional in 1954,[2] and subsequently, a class action against the State and its Board of Edu-

1. 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

2. The Delaware case was one of four decided under the Brown heading.

cation was brought by Negro children to compel their admission into the public schools of Delaware on a racially nondiscriminatory basis. Summary judgment for the plaintiffs was granted in 1957.[3] In 1959 a proposed plan for integration was submitted to this court for approval and after extensive litigation it was approved in 1961.[4] This court retained jurisdiction of the original cause and the parties in order to ensure the vindication of the plaintiffs' rights, to allow the defendants to petition for temporary relief in the event the plan was placing a great burden on the administration of the school system, and to hear other matters pertaining to the problem of integrating the public schools.[5]

Apart from all this litigation, on October 14, 1954 the State Board ordered the local boards to prepare plans for desegregation to be submitted to the former for its approval. The plan which is the subject of this suit was submitted and approved by the Board in 1955. It is not part of the general plan which received court approval in 1961. Generally, the plan which was drawn up by the Rose Hill-Minquadale District called for its own reorganization; a map showing the final result of it is reproduced below.

SCHOOLS
1. MINQUADALE
2. DUNLEITH
3. ROSE HILL
4. COLWYCK ELEM.

3. Evans v. Buchanan, 152 F.Supp. 886 (D.Del.1957).

4. Evans v. Buchanan, 195 F.Supp. 321 (D.Del.1961).

5. See 195 F.Supp. at 323.

Prior to the Brown case and this specific reorganization there were two administrative boards with constituencies of coterminous boundaries. The Dunleith Board (Millside District) had jurisdiction over one school, the Dunleith School, which then served all the Negro children in the Rose Hill-Minquadale area for grades 1–9. The predecessors of the Rose Hill Board had jurisdiction of all the white schools in the district. Thus, it is clear that this specific plan called for the severance of one part of the Rose Hill-Minquadale District and its establishment as a separate district called Millside.

The Dunleith School is all Negro and serves these children for grades 1–9. It has no white students. Dunleith has an all Negro faculty and is administered by a special Board of Trustees.[6] It is in the center of attendance area No. 2— the Millside District—in which only Negro families live. It should be noted that the Millside District is quite small in area when compared to the surrounding attendance areas and that the latter areas are all white or primarily all white districts. The white children in areas 1, 3, and 4 go to their respective elementary schools for grades 1–5; then they all go to the Colwyck Jr. High School for grades 6–9. The Colwyck Elementary School is all white; there are some Negroes in the Rose Hill-Minquadale Schools. For grades 10–12 all students, both white and Negro, from the areas denoted 1–4 go to the senior high.

Counsel for the Negro children predicate the right of transfer on the grounds that the Rose Hill Board and the State Board in its approval of the former's plan have acted unconstitutionally. It is argued that the State is compelled by the equal protection clause of the Federal Constitution to provide affirmatively an integrated education. Thus, Delaware must ensure the fact that Negroes go to school with whites; a principle which allegedly has been flagrantly violated in this case. Alternatively, the plan is attacked as a deprivation of Fourteenth Amendment rights on the grounds that the Board failed to consider the integration problem when drawing up the plan. The latter must be irrational, it is argued, because its makers failed to consider the vital, race problem. The usual arguments and proofs are made in favor of constitutionality. Rose Hill Board argues that the sole criteria were the use of facilities, access roads, etc., and that the plan therefore meets the standards of rationality demanded by the applicable constitutional provision.

■■ The court holds that the States do not have an affirmative, constitutional duty to provide an integrated education. The pertinent portion of the Fourteenth Amendment of the United States Constitution reads, "nor [shall any State] deny any person within its jurisdiction the equal protection of the laws." This clause does not contemplate compelling action; rather, it is a prohibition preventing the States from applying their laws unequally.

When interpreting the equal protection clause in the Brown case the Supreme Court held only that a State may not deny any person on account of race the right to attend a public school. Chief Justice Warren, speaking for the court said, "To separate them [Negroes] from others * * * *solely* because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone." [7] (Emphasis supplied.) The clear implication of this statement is that if races are separated because of

---

6. It does not appear from the record whether the Board is composed entirely of Negroes. It is, however, the successor of an all Negro Board and has jurisdiction over an all Negro District.

Therefore, it would appear safe to assume that the Millside Board is all Negro.

7. 347 U.S. at 494, 74 S.Ct. at 691 (1954).

geographic or transportation considerations or other similar criteria, it is no concern of the Federal Constitution. Thus, discrimination is forbidden but integration is not compelled.

Counsel has cited cases they assert support the children's position. The court believes otherwise. In the Taylor case,[8] strong factual showings of discrimination were made. In another case,[9] the Fourth Circuit upheld the denial of the district court of 5 Negro children's application for transfer on the grounds that the criteria of residence and academic preparedness were properly applied in the threshold denial by the School Board. Moreover, several lower courts have squarely held that the States have no affirmative duty in this area.[10] This court can only conclude that the present state of the law does not support this position.

In effect, counsel is asking the States to intentionally gerrymander districts which may be rational when viewed by acceptable, nondiscriminatory criteria. The dangers of children unnecessarily crossing streets, the inconvenience of traveling great distances and of overcrowding and other possible consequences of ensuring mixed schools outweigh the deleterious, psychological effects, if any, suffered by Negroes who have not been discriminated against, as such, but who merely live near each other. As with most problems, its cure rests in elimination of its roots. The problems in this case grow out of segregated housing.

■ The assertion that the Board's failure to consider the racial problem renders the plan unconstitutional must, as a matter of law, be rejected. When carefully analyzed it is apparent that it leads to no different place than the first argument. As a practical matter consideration of a problem is only meaningful when acted upon. The action which such consideration would evoke is affirmative integration. The latter is not constitutionally compelled.

■■ There have been many lower court decisions [11] since the Brown case held children may not be denied entrance to public schools solely on the basis of race. One of the teachings of these cases is that whether Negro children are deprived of their constitutional rights is a question of fact. Criteria such as transportation, geography and access roads are rational bases for establishing pupil attendance areas or designating school districts. If, however, these criteria are merely camouflage and school officials have placed children in particular districts solely because of race, a cause of action under the Constitution exists.

Whether such a case is presented can be fairly and intelligently determined only after a detailed presentation and careful study of all the relevant facts. Detailed exhibits and testimony should be offered demonstrating why a school board chose to draw its lines in the manner it did. What directions, if any, were given by the school board to the persons designated to delineate the attendance areas and all relevant and pertinent discussions by the school board held in conjunction with the formulation of a plan should be presented. Evidence should be

8. Taylor, et al. v. Board of Education, 191 F.Supp. 181 (S.D.N.Y.), aff'd. 294 F.2d 36 (2 Cir. 1961).

9. Jones v. School Board of City of Alexandria, 278 F.2d 72 (4 Cir. 1960).

10. Thompson v. County School Board of Arlington, 204 F.Supp. 620 (E.D.Va. 1962); Briggs v. Elliott, 132 F.Supp. 776 (E.D.S.C.1955). But see Branche v. Board of Education of the Town of Hempstead, 204 F.Supp. 150 (E.D.N.Y. 1962).

11. See e. g., cases notes 8–10, supra; Sealy v. Department of Public Instruction of Penn., 252 F.2d 898 (3 Cir. 1958); Calhoun v. Members of Bd. of Education, City of Atlanta, 188 F.Supp. 401 (N.D.Ga.1959); Henry v. Godsell, 165 F.Supp. 87 (E.D.Mich.1958); Kelly v. Board of Education of City of Nashville, 159 F.Supp. 272 (M.D.Tenn.1958).

offered dealing with location, physical facilities, access roads, modes of transportation, population of particular pupil attendance areas and the white-Negro ratio of both students and teachers.

When it is alleged and uncontroverted as in this case that the children go to an all Negro student and faculty school, administered by a separate Board of Trustees, and surrounded entirely by predominantly white attendance areas, the controlling public attendance area plan is subject to careful scrutiny and the promulgators of the plan should have the duty of justification. The Rose Hill-Minquadale Board as promulgator of the plan and the State Board of Education as the party having the ultimate responsibility for administering a nondiscriminatory system of public education should have the initial burden of coming forward since a presumption of unconstitutionality arises under this set of facts.[12] This presumption principle rests upon a bilateral rationale. First, the basic facts are highly probative of the presumed fact.[13] Secondly, the evidence, in great part, rests in the hands of those who conceived and implemented the plan.

A hearing has been held and proof offered. At best, the evidence presented by the Rose Hill-Minquadale Board as justification for its action and that of the State Board of Education, is inconclusive.[14] The type of showing necessary to rebut the presumption of unconstitutionality has not been made. Thus, in this posture, the court has no other alternative but to decree that the 9 children who have applied for admission to the Rose Hill School this fall be admitted[15] and that the 19 children admitted to the Rose Hill School last fall remain until further order of this court. This, in no way, shall prejudice the right of the Rose Hill-Minquadale Board and the State Board of Education to come forward at any time with additional evidence to justify the present plan of pupil attendance areas as rational and nondiscriminatory.[16] At such a time the court will, of course, consider any rebuttal evidence the involved children may wish to offer. Thereafter, a final decision on the constitutionality of the present plan will be made. If the plan is determined to be nondiscriminatory and therefore constitutionally unassailable, the Negro children will be ordered back to the designated school for their attendance area.[17]

Submit order in accordance herewith.

12. The court does not mean to suggest that a presumption will only arise on this set of facts. The one fact of an all Negro student body might be sufficient to justify the invocation of the presumption. We need not decide that now.

13. The existence of an all Negro student body and faculty, administered by a separate board and surrounded by white districts on all sides is highly probative of the fact of discrimination.

14. Basically, the Board's one witness asserted that only facilities, location and access roads were considered in drawing up the plan. The Board offered little more than that in justification.

15. Of course, if 200 children applied for transfer, even if the presumption were operative the court might not order transfer as a matter of course.

16. The court does not feel that a final decision on the merits should be made until the Board has had an opportunity to come forward under the guidelines of this opinion.

17. Absent compelling reasons the court would make the order effective at the next fall term following its decision.